## STATE OF CONNECTICUT *v.* LARRY McINTOSH
## (11882)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued December 13, 1985—decision released March 18, 1986

*John J. Kindl,* special public defender, for the appellant (defendant).

*Martin A. Rader, Jr.,* special assistant state's attorney, with whom were *Bradford J. Ward,* assistant state's attorney, and, on the brief, *John A. Connelly,* state's attorney, for the appellee (state).

DANNEHY, J. After a jury trial the defendant, Larry McIntosh, was found guilty of murder in violation of General Statutes § 53a-54a and committed to the custody of the commissioner of correction for a term of forty years. The indictment charged that he had caused the death of Kim Rascoe by blows to the head with a hammer. On appeal, the defendant contends that the

trial court erred in refusing his request for instructions on certain lesser included offenses and in admitting hearsay testimony.

It is undisputed that the defendant killed Kim Rascoe. Rascoe, with whom the defendant had broken off relations, lived with their child in the first floor apartment at 37 Vine Street in Waterbury. Her parents and her brother lived on the second floor. The evidence introduced at trial showed that early in the evening of April 23, 1982, Rascoe was found unconscious on the floor of her apartment with severe wounds about the head and body. The apartment was in a state of disarray with the television set overturned. Among the items in the apartment was a hammer. Rascoe was taken to a hospital and died shortly thereafter of multiple fractures of the skull and contusions of the brain caused by lethal blows to the head with a blunt instrument.[1]

Later that evening, at about 10 p.m., a police patrol unit, alerted to look for the defendant, encountered him on upper North Main Street, less than one mile from 37 Vine Street, where he was immediately placed under arrest. The police officer who had apprehended the defendant and accompanied him to the police station testified that he said, "Hold it Larry" and the defendant answered, "My name isn't Larry."

---

[1] The victim, a small woman about five feet one inch tall, was severely beaten. According to medical testimony, she had sustained a severe brain injury with multiple skull fractures, fractures of the ribs and a fracture of the spine. That testimony further indicated that the head injuries were consistent with being struck by the hammer found at the scene and that the injuries were caused by fifteen blows to the head inflicted with considerable force. On April 28, 1982, five days after the incident, the victim's heart and lungs were still functioning but a "flat" E.E.G. indicated that her brain had ceased to function. At 2:22 p.m. on April 28, 1982, the victim was pronounced dead when, having obtained the consent of her parents, medical personnel terminated her life support systems. The medical examiner testified that the cause of death was "[b]lunt force trauma of head with depressed skull fractures and contusions of brain."

The defendant was advised of his rights and then questioned by the police at the station. He was outwardly calm, alert, and without any complaint or visible sign of injury. After some additional questioning, he spoke to one officer alone and gave the officer a statement which was subsequently admitted at trial.[2] The statement revealed that the defendant had gone to Rascoe's apartment in the afternoon of April 20, 1982, to see their daughter. In the living room of the apartment, the defendant, Rascoe and their daughter were sitting on a couch watching television. According to the defendant's statement, Rascoe suddenly began to swing a hammer at him and a fight ensued. The defendant admitted hitting Rascoe in the head with the hammer and indicated that when he left, Rascoe was on the floor. The defendant did not testify or present any witnesses at trial.

## I

The defendant claims that the trial court erred in denying his request to charge on the lesser included

---

[2] The defendant's statement introduced into evidence was as follows:

"On April 23rd, 1982 I went to Kim Rascoe's house on Vine Street, in the afternoon, to see my daughter, Timira Rascoe. Kim Rascoe is her mother. I went to the side door of the house and knocked and Kim Rascoe let me in. I went into the living room and started to watch t.v. with my daughter. Kim had a stick in her hand when I came in.

"The three of us were sitting on the couch when all of a sudden, for no reason, Kim started swinging a hammer at me, she must have had the hammer with her all the time, but I didn't see it until she started to swing it. I caught the hammer and got it away from her and I hit her back with the hammer in her body and shoulder and head. I wanted to hurt her because she was trying to hurt me.

"My daughter was watching the whole thing. We had struggled in the living room and the t.v. got knocked over. The glass in the hall door also got broken in the struggle.

"We were tussling on the floor in the living room when I got the hammer, after I hit her with it, I threw it down.

"I then left by going out through the window in the door that was broken because I heard her family, who live upstairs, coming down and I didn't

offense of manslaughter in the first degree, in violation of General Statutes § 53a-55 (a) (2). The defendant timely filed his request to charge prior to closing arguments, and took an exception when the charge was not given.

In *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), this court determined that a lesser included offense instruction should be given when: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser."

We have previously considered and rejected the claim "that a defendant has a fundamental constitutional right to a jury instruction on a lesser included offense." Id., 581. The right to such an instruction is purely a matter of our common law as set forth in *Whistnant* itself. The first prong of *Whistnant* requires that the defendant request "an appropriate instruction," and a proposed instruction on a lesser included offense, like any other proposed jury instruction, is not appropriate unless made in compliance with Practice Book § 852. That section provides in full: "Prior to the beginning of the arguments, sufficient copies of written requests to charge the jury must be filed with the clerk, who shall forthwith hand a copy to the judicial author-

want to get involved with them. I mean, I had started to go out that window, but when I heard the family I doubled back and went out the back door. I then walked up by Lakewood."

ity and to all other parties. *Requests shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the facts supported by the evidence to which the proposition would apply.* Requests to charge should not exceed fifteen in number, unless, for good cause shown, the judicial authority permits the filing of an additional number. If a request to charge is granted, the judicial authority shall apply the proposition of law to the facts of the case. A principle of law should be stated in but one request and in but one way. *Requests attempting to state in different forms the same principle of law as applied to a single issue are improper."* (Emphasis added.)

In the present case, the defendant framed his request to charge as follows: "The defendant respectfully requests the Court to instruct the jury as to the elements as to the lesser-included offenses of manslaughter in the first degree, Sec. 53a-55 (a) (1); manslaughter, first degree, Sec. 53a-55 (a) (2); manslaughter, first degree, Sec. 53a-55 (a) (3); criminal attempt to commit murder, Sec. 53a-54a and 53a-49; manslaughter in the second degree, Sec. 53a-56 (a) (1) and assault, first degree, 53a-59 (a) (1); assault in the first degree, 53a-59 (a) (2) and assault in the first degree, 53a-59 (a) (3). *State* v. *Whistnant,* CLJ Col. XLI No. 33, p. 5."[3]

This omnibus request was not an adequate compliance with our rules of practice. The request as framed can hardly be read to state "clearly and concisely" a

---

[3] The defendant in his brief to this court claimed error only in the trial court's refusal to instruct on the elements of manslaughter in the first degree, as defined by General Statutes § 53a-55 (a) (2), and on the elements of manslaughter in the second degree, as defined by General Statutes § 53a-56 (a) (1). At oral argument, the defendant expressly conceded that the trial court did not err in refusing to give the requested instruction under General Statutes § 53a-56 (a) (1).

"*single* proposition of law." (Emphasis added.) Practice Book § 852. We count, instead, no fewer than eight distinct statutory theories of lesser or alternative culpability in the single paragraph. Moreover, an "appropriate instruction" under *State* v. *Whistnant* must contain " 'a complete statement of the essential facts as would have justified the court in charging in the form requested.' *Michaud* v. *Gagne,* 155 Conn. 406, 410, 232 A.2d 326 (1967), quoting *Dwyer* v. *Connecticut Co.,* 103 Conn. 678, 680, 131 A. 838 (1925)." *State* v. *Killenger,* 193 Conn. 48, 57, 475 A.2d 276 (1984). The defendant's request contains no facts at all. Finally, although the request cites *State* v. *Whistnant* as authority for the propositions stated, we emphasize that *Whistnant,* by itself, does not provide the substantive principles of the criminal law which would justify any particular instruction. In setting the four preconditions to a lesser included offense instruction, *Whistnant* states no more than a rule of procedure which must be followed before the requested instruction need be given. While this court does not favor unyielding adherence to rules of procedure where the interests of justice are thereby disserved, we have rejected the broad claim that a trial court has an independent obligation " 'to instruct, sua sponte, on general principles of law relevant to all issues raised in evidence' "; *State* v. *Preyer,* 198 Conn. 190, 198 n.9, 502 A.2d 858 (1985); and, as we have stated, a criminal defendant has no fundamental constitutional right to be convicted of any lesser crime than the evidence warrants. *State* v. *Whistnant,* supra. Although it is unnecessary in this case to consider the second, third, or fourth prongs of the *Whistnant* test, we merely observe that the evidence adduced at trial was more than sufficient to support a jury finding that the defendant intended to commit murder.

The ever increasing refinement of our law justifies the cooperation of counsel in stating requests for jury

instructions, and this cooperation is mandated, at least to the extent of substantial compliance with Practice Book § 852. The minor burden of cooperation imposed by this section is neither unreasonable nor novel. Our courts have long recognized that a request of the type made here "hinders rather than helps" the trial court in determining whether a particular instruction should be given. See *Marinelli* v. *Cutarelli,* 2 Conn. Cir. Ct. 15, 20, 193 A.2d 727 (1963). The request in this case contains nothing more than a skeletal list of statutory subsections. "As a result it is hard for us, and must have been hard for the trial court, to know the precise point to which the defendant wished to call attention." *State* v. *McNamara,* 128 Conn. 273, 276, 22 A.2d 10 (1941); *Walczak* v. *Daniel,* 148 Conn. 592, 594–95, 172 A.2d 915 (1961); *Lowell* v. *Daly,* 148 Conn. 266, 270, 169 A.2d 888 (1961). The trial court did not err in refusing the defendant's request to instruct the jury on the elements of General Statutes § 53a-55 (a) (2).

## II

We next address the defendant's claim that the trial court erred in admitting into evidence a hearsay statement made by the victim. The victim's mother testified that on the night before the murder, the victim came to her upstairs apartment and asked to use the phone to call the police because the defendant was downstairs at her door. The defendant objected to this testimony on the ground that it was inadmissible hearsay. The trial court overruled the objection and admitted the testimony, under the state of mind exception to the hearsay rule, to show "that the deceased was afraid of the defendant and as a result of her fears, she called the police" when he appeared at her door on the night before her murder. The defendant claims that the admission of this testimony violated his sixth amendment right of confrontation.

While the defendant fashions his claim of error in terms of the sixth amendment, we believe the issue involves only the hearsay rule. While the "hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law." *California* v. *Green,* 399 U.S. 149, 155–56, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970); *State* v. *Rawls,* 198 Conn. 111, 115, 502 A.2d 374 (1985). "In this instance, the defendant has put a constitutional tag on a nonconstitutional claim." *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985); *State* v. *George,* 194 Conn. 361, 372, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985); *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982).

The trial court properly admitted the challenged testimony in this case. The victim's mother testified from her own personal knowledge that the victim entered her apartment, picked up the phone, and dialed the police. The only possible hearsay component of this testimony concerned the victim's stated reason for her call, i.e., that the defendant was at her door. The statement was not offered to prove that the defendant, in fact, was at the door, but rather, to show such a state of fear in the victim as to cause her to call the police if she *believed* that the defendant was at her door. Whether the victim's statement that the defendant was at her door is characterized as "words accompanying equivocal conduct"; Tait & LaPlante, Handbook of Connecticut Evidence (1976) § 11.3 (b); or as a statement indicative of her then existing state of mind; id., § 11.13; the fact that the victim called the police for the reason she expressed to her mother is strong circumstantial evidence of her belief that the defendant

intended to harm her and that she needed physical protection. From this evidence of the victim's state of mind, the jury could reasonably infer that, because of her fear of the defendant, it was improbable that she, without provocation, had attacked him with a hammer, as he had claimed in his statement to the police. While the chain of inferences between the initial proposition and desired conclusion may be somewhat attenuated, we confide matters of relevance to the sound discretion of the trial court. Under the circumstances of this case, we cannot say that the victim's intense fear of the defendant, as evidenced by her conduct on the eve of the brutal slaying, was wholly irrelevant to the issues at trial. We therefore conclude that the trial court did not err in admitting the testimony of the victim's mother concerning the call to police.

There is no error.

In this opinion the other judges concurred.