STATE OF CONNECTICUT *v.* GAIL HANCICH
(12652)
(12743)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued April 30—decision released July 29, 1986

*Arnold B. Abrams* and *Philip A. Wright, Jr.,* with whom, on the brief, was *F. Woodward Lewis,* for the appellant (defendant in both cases).

*Michael E. O'Hare,* deputy assistant state's attorney, with whom, on the brief, were *Frank D'Addabbo,* assistant state's attorney, *James G. Clark,* deputy assistant state's attorney, and *Mary Glassman,* law student intern, for the appellee (state).

DANNEHY, J. These two appeals arise from separate incidents in which this defendant was apprehended by police while driving her motor vehicle under the influence of intoxicating liquor, in violation of General Statutes § 14-227a. The first arrest occurred on August 22, 1983. On the basis of that arrest, the defendant applied for admission into the statutory pretrial alcohol edu-

cation program; General Statutes § 14-227b; and was admitted on October 5, 1983. Little more than five months later, and before she had completed the program, the defendant was again arrested, on March 11, 1984, for operating her motor vehicle while under the influence of intoxicating liquor.

Thereafter, on October 11, 1984, the defendant completed the pretrial alcohol education program, and received a "certificate of completion" from the "program provider." The defendant's trial on her March 11, 1984 arrest began on November 1, 1984. Prior to the start of trial, the defendant moved to have dismissed the charges against her arising from the August 22, 1983 arrest in connection with which she had recently completed the pretrial alcohol education program. The trial court, *Susco, J.,* reserved decision on the defendant's motion, pending the outcome of the defendant's trial on her March 11, 1984 arrest. That trial ended in a verdict of guilty on November 7, 1984. On the basis of that conviction, the trial court denied the defendant's motion to dismiss the charges stemming from her August 22, 1983 arrest, and the defendant entered a plea of nolo contendere to those charges on November 21, 1984.

The defendant raises several claims of error challenging her November 7, 1984 conviction for driving while under the influence of intoxicating liquor. We will consider those claims momentarily. At present it is sufficient to note that we find error in that conviction, and order a new trial. The defendant also claims error in the trial court's denial of her motion to dismiss the August 22, 1983 charges against her, to which she pleaded nolo contendere on November 21, 1984. The defendant's claim in this regard is essentially the same as that recently considered by this court in *State* v. *Descoteaux,* 200 Conn. 102, 509 A.2d 1035 (1986). In *Descoteaux,* the defendant had been removed from the

pretrial alcohol education program on the basis of her conviction on a subsequent arrest for driving while under the influence of intoxicating liquor. We held that that conviction, even though arising from a subsequent incident, provided the trial court a sufficient reason to remove the defendant from the program. The only difference that we perceive between this case and *Descoteaux* is that in this case the defendant's November 7, 1984 conviction, which provided the reason for her removal from the program, was subsequently reversed on appeal, infra, in this opinion. Therefore, with regard to the trial court's denial of the defendant's motion to dismiss the August 22, 1983 charges, we believe that the only issue remaining for our consideration is whether our reversal of the defendant's November 7, 1984 conviction is sufficient to distinguish this case from the holding in *Descoteaux*. For the reasons to follow, we conclude that it is, and accordingly, the November 21, 1984 conviction may not stand. We turn now to the specific claims raised by the defendant.

I

### THE MARCH 11, 1984 OFFENSE

Officer Thomas Curran of the Wallingford police department testified at the defendant's trial. According to Curran, he observed the defendant driving her automobile in an erratic manner shortly after 2 a.m. on March 11, 1984. He testified that the defendant had been driving at a high rate of speed, that she failed to stop at a stop sign, and that she crossed the yellow median four times. Curran also testified that he had followed the defendant with his strobe light and siren on for approximately one mile before she finally pulled over. The defendant could not recite the alphabet beyond the letter "F," nor could she stand on her feet without assistance. At 2:16 a.m., Curran placed the defendant under arrest for driving under the influence

of intoxicating liquor, in violation of General Statutes § 14-227a (a). At 3 a.m., at the police station, the defendant submitted to chemical analysis of her breath as required by General Statutes § 14-227b. *Buckley* v. *Muzio*, 200 Conn. 1, 509 A.2d 489 (1986). The defendant's blood alcohol content measured at .165 percent.

The defendant claims on appeal that the trial court erred: (1) in not instructing the jury on the lesser included offense of driving while impaired in violation of General Statutes § 14-227a (b); (2) in failing to explain adequately the phrase "under the influence" in its charge to the jury; (3) in allowing into evidence the results of the defendant's breathalyzer test; and (4) in denying the defendant's motion for mistrial based on the trial court's redetermination, during jury selection, of the number of peremptory challenges remaining to the defendant. We find error only in the defendant's final claim. We consider the first three claims only insofar as they may likely recur on retrial.

### A

#### LESSER INCLUDED OFFENSE

The defendant claims that she was entitled to a lesser included offense instruction on driving while impaired, an offense defined in General Statutes § 14-227a (b). The trial court denied the defendant's request to charge because it believed that driving while impaired, an *infraction;* General Statutes § 14-227a (i); could not be considered an *offense* for purposes of the lesser included offense doctrine. While we do not agree with the trial court's reasoning, we believe that its decision may be sustained under our conventional analysis. As we have stated many times, a lesser included offense instruction is not appropriate unless "there is some evidence, introduced by either the state or the defendant . . . which justifies conviction of the lesser offense; and . . . the proof on the element or elements which

differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). General Statutes § 14-227a (b) provides that a "person shall be deemed impaired when at the time of the alleged offense the ratio of alcohol in the blood of such person was more than seven-hundredths of one per cent of alcohol, by weight, but less than ten-hundredths of one per cent of alcohol, by weight." Section 14-227a (d) (3) describes "impairment" in terms of the same numerical parameters. Therefore, under these two subsections it is clear that a person is impaired *as a matter of law* when his or her blood alcohol level is greater than .07 percent and less than .1 percent.

While "legal" impairment is conclusively established where a person's blood alcohol percentage falls between .07 and .1 percent, the version of General Statutes § 14-227a (d) (4) in effect when this offense was committed did not create a similar presumption of guilt, based on blood alcohol percentage, with respect to the crime of operating a motor vehicle while under the influence of intoxicating liquor as defined in General Statutes § 14-227a (a). The former § 14-227a (d) (4)[1] provided that a blood alcohol level of "ten-hundredths of one per cent or more . . . shall be prima facie evidence that the defendant was under the influence of intoxicating liquor within the meaning of this section." That section thus created only a rebuttable presumption that a person was "under the influence of intoxicating liquor" where his or her blood alcohol level was

---

[1] Public Acts 1985, No. 85-596, § 1, repealed the former General Statutes § 14-227a (d) in its entirety to provide that "[a] person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor . . . (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight." See *State* v. *Kozlowski*, 199 Conn. 667, 671, 509 A.2d 20 (1986).

found to equal or exceed .1 percent. While evidence of such an alcohol level was sufficient to establish the state's prima facie case, the defendant was formerly allowed to introduce evidence to show that, despite a blood alcohol level equal to or greater than .1 percent, he or she had not been *under the influence* of intoxicating liquor at the time of arrest. Thus, although in the present case the defendant's blood alcohol level was measured at .165 percent, the possibility that she was merely impaired, and not under the influence, cannot be excluded as a matter of law under the former General Statutes § 14-227a (d) (4). The question whether the defendant was entitled to a lesser included offense instruction thus turns on the peculiar facts of the case as revealed by the evidence at trial. In the present case, an instruction on the lesser included offense of operating while impaired would not have been appropriate unless there were some factual basis—some evidence introduced at trial—which would have supported a jury finding that the defendant was impaired, but not under the influence, when she was apprehended by police in the early morning of March 11, 1984.

From what we have said we find it rather obvious that the defendant in this case was not entitled to an instruction on the lesser included offense of driving while impaired. Our abbreviated account of Curran's testimony indicates that the defendant, irrespective of her blood alcohol level, was quite intoxicated. Curran's testimony was unrebutted by the defendant, and therefore, there was no evidence whatsoever from which the jury could find that the defendant was not under the influence of intoxicating liquor. If this were at all a close case, then we might be concerned with the trial court's refusal to instruct on the lesser offense of impairment. But the evidence introduced at this trial was such as to exclude completely the possibility that the defendant was not under the influence of intoxicating liquor,

and operated her vehicle while merely impaired. Since the defendant was not entitled to a lesser included offense instruction under the dictates of *State* v. *Whistnant,* supra, the trial court did not err in refusing to give one.

## B

### DEFINITION OF "UNDER THE INFLUENCE"

The defendant claims that the trial court erred in instructing the jury on the meaning of "under the influence" as that phrase is used in General Statutes § 14-227a (a). The defendant filed the following request to charge, and took an exception when the charge was not given: "If intoxicating liquor has so far affected the nervous system and brain of the driver of a motor vehicle as to impair to an appreciable degree his ability to operate the car as he would in the full possession of his faculties, then such a driver is under the influence of intoxicating liquor within the meaning of the statute." Instead of charging in accordance with the defendant's request, the trial court instructed the jury to apply the ordinary meaning of the word "influence," which it then defined as "the power of producing an effect."

The defendant's request to charge appears to be based on language found in our cases. See *Higgins* v. *Champ,* 161 Conn. 200, 203, 286 A.2d 313 (1971); *Infeld* v. *Sullivan,* 151 Conn. 506, 509, 199 A.2d 693 (1964); *State* v. *Andrews,* 108 Conn. 209, 216, 142 A. 840 (1928). While the defendant has cited these cases in support of her claim of error in her brief to this court, she did not mention these or any other cases in her request to charge, as required by Practice Book § 852. We presume, for example, that had the defendant cited *Higgins* v. *Champ,* supra, as authority for her requested instruction, then the trial court would have adopted the request, and the present claim of error would not be

before us. Practice Book § 852 provides, in pertinent part, that each request "shall be . . . concisely stated with the citation of authority upon which it is based." See *State* v. *McIntosh,* 199 Conn. 155, 160–61, 506 A.2d 104 (1986).

Because the defendant did not comply with Practice Book § 852, we review this claim of error only insofar as the trial court's charge may have deprived the defendant of a fundamental constitutional right and a fair trial. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). The defendant does not claim that the charge as given has deprived her of any fundamental constitutional rights, and we do not think that she reasonably could prevail on such a theory. We therefore do not review this claim of error.

## C

### BREATHALYZER RESULTS

The defendant contends that a proper foundation was not laid for the admissibility of her breathalyzer test results, and that the trial court erred in allowing those results into evidence. General Statutes § 14-227a (c) sets forth seven preconditions to the admissibility of breathalyzer results at trial. The defendant challenges only the sixth of those preconditions, which provides that breathalyzer results are inadmissible unless "evidence is presented which demonstrates that the test results accurately reflect the blood alcohol content at the time of the alleged offense." General Statutes § 14-227a (c) (6). We find the defendant's claim to be without merit.

The state presented evidence that approximately forty-four minutes had elapsed between the defendant's arrest and the time the breathalyzer test was administered. The defendant consumed no additional alcohol during this period. The state also presented

evidence that the machine used to measure the defendant's blood alcohol content had been certified by the state health department. Officer Gary Ripa of the Wallingford police department testified that he had checked the machine for accuracy before administering the test to the defendant. Finally, Abraham Stolman, who was then the chief toxicologist for the state of Connecticut, testified that the machine was working properly. The trial court did not err in allowing the results of the breathalyzer test into evidence.

## D

### PEREMPTORY CHALLENGES

Jury selection for the defendant's trial commenced on October 25, 1984. Under General Statutes § 54-82h, the parties were each entitled to four peremptory challenges. See General Statutes § 14-227a (h). Nonetheless, the trial court mistakenly informed counsel that each side would have eight peremptory challenges. The trial court did not realize its mistake until October 30, 1984, at which time three jurors had been selected and the defendant had exercised four peremptory challenges. The trial court then informed counsel that they would not be afforded eight peremptory challenges as it initially had indicated. Defense counsel stated that he would not have exercised his last peremptory challenge had he known that he would subsequently be limited to only four. In response, the trial court offered to allow the defendant to retract her last peremptory challenge, and therefore, to accept as a member of the jury the recently excused venireman. The trial court also offered to allow the defendant an additional peremptory challenge. The defendant refused the offer, and moved for a mistrial. The trial court denied the defendant's motion.

" 'The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that

as a result of some occurrence during trial a party has been deprived of the opportunity for a fair trial. *State* v. *DeMatteo,* 186 Conn. 696, 703, 443 A.2d 914 (1982); *State* v. *Gooch,* 186 Conn. 17, 25, 438 A.2d 867 (1982); *State* v. *Turcio,* 178 Conn. 116, 143, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); see Practice Book § 887.' *State* v. *Binet,* 192 Conn. 618, 628, 473 A.2d 1200 (1984), quoting *State* v. *Ubaldi,* 190 Conn. 559, 562, 462 A.2d 1001, cert. denied, 462 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983)." *State* v. *Gaston,* 198 Conn. 490, 495–96, 503 A.2d 1157 (1986). "The trial court enjoys wide discretion in deciding whether a mistrial is warranted; *State* v. *Nowakowski,* 188 Conn. 620, 624, 452 A.2d 938 (1982); *State* v. *Gooch,* supra, 25; and its decision will be reversed on appeal only if it is established that this discretion has been abused." *State* v. *Fleming,* 198 Conn. 255, 264, 502 A.2d 886 (1986).

In the present case, three jurors and an alternate remained to be selected when the trial court decided that the defendant had exhausted her challenges. We do not think that the defendant should have been required to accept the trial court's offer to recall a particular venireman who had just recently been excused from service. The dismissed venireman in this case may well have become prejudiced by his disqualification from service as a juror, and the defendant should not have been made to gamble that this prejudice would not have been directed at her. In 1972, article first, § 19, of our constitution was amended to provide that "[i]n civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law." Conn. Const., art. I § 19, as amended by art. IV (Dec. 22, 1972). This constitutional enactment reflects the abiding belief of our citizenry that an impartial and fairly chosen jury is the cornerstone of our criminal justice system.

This court has never hastened to find error in a trial court's failure to grant a mistrial. The defendant in this case, however, as in any other case, selected or rejected individual veniremen in reliance on the number of peremptory challenges to which the trial court had led her to believe she was entitled. We note that the trial court could not have committed harmful error by simply allowing the parties more peremptory challenges than provided by law, or in the alternative, by granting the motion for mistrial and beginning juror selection anew. Although the state has presented sufficient evidence to sustain the defendant's conviction, this court cannot countenance the trivialization of article first, § 19, of our constitution which would inevitably follow from our failure to take appropriate action in this case. We therefore hold that the trial court erred in not granting the defendant's motion for a mistrial, and this case must be remanded for a new trial.

## II

### THE AUGUST 22, 1983 OFFENSE

We next consider the defendant's claim that the trial court erred in refusing to dismiss the charges arising from her August 22, 1983 arrest for operating a motor vehicle while under the influence of intoxicating liquor. The trial court refused to dismiss those charges due to the defendant's subsequent conviction for operating while under the influence, which conviction we have reversed, supra, in this opinion. After the trial court denied the defendant's motion to dismiss the charges arising from the August 22, 1983 offense, the defendant pleaded nolo contendere, on November 21, 1984.

In *State* v. *Descoteaux*, supra, 106–107, we held that General Statutes § 54-56g (b) "requires the trial court to make an independent determination of the defendant's satisfactory completion of the prescribed program of alcohol education and treatment." In the present

case it does not appear from the record that the trial court made any such independent determination. Rather, it appears that the trial court based its decision to deny the defendant's motion to dismiss the August 22, 1983 charges, and to remove her from the pretrial alcohol education program, solely upon the defendant's conviction, on November 7, 1984, on the charges stemming from the March 11, 1984 offense. Since that conviction has now been reversed, it no longer provides an adequate basis to sustain the trial court's action in denying the motion to dismiss.

Once she had been admitted to the pretrial alcohol education program, the defendant could not be removed unless the trial court made an independent determination that she had lost her eligibility to continue or that she had not completed it successfully. *State* v. *Descoteaux,* supra, 108. We note that in this case the trial court need not have deferred its decision on the defendant's motion to dismiss to await the outcome of the upcoming trial on the March 11, 1984 arrest. The defendant was entitled to no more than a hearing; see *Gagnon* v. *Scarpelli,* 411 U.S. 778, 791, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); *Morrissey* v. *Brewer,* 408 U.S. 471, 485, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *Parham* v. *Warden,* 172 Conn. 126, 132, 374 A.2d 137 (1976) (revocation of parole); and to an independent determination by the trial court that she had committed the act underlying the March 11, 1984 arrest, and that based on that act, she could not successfully have completed the pretrial alcohol education program. Minimum standards of due process would further require that the trial court state the reasons for its decision on the record. *Lee* v. *Board of Education,* 181 Conn. 69, 79–80, 434 A.2d 333 (1980).

Thus, while the evidence adduced at the defendant's trial for the March 11, 1984 offense certainly would have justified an independent determination by the trial

court that the defendant could not successfully have completed the pretrial alcohol education program, the trial court made no finding to that effect. We therefore find error in the trial court's denial of the defendant's motion to dismiss the August 22, 1983 charges, and remand the case to the trial court for a determination of whether the circumstances surrounding the March 11, 1984 arrest were such as to require her removal from the program.

There is error in the first case, and the case is remanded for a new trial.

There is error in the second case, and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion PETERS, C. J., SANTANIELLO and CALLAHAN, Js., concurred.

SHEA, J., concurring. Although I agree with the remainder of the majority opinion, I disagree with the portion relating to the March 11, 1984 offense that allows a person whose blood alcohol level is .1 percent or greater to be found guilty of operating a motor vehicle while his ability to do so is impaired in violation of subsection (b) of General Statutes § 14-227a, an infraction, rather than of operating under the influence of intoxicating liquor in violation of subsection (a), which bears far more serious consequences. Subsection (b) provides that "[a] person shall be deemed impaired when at the time of the alleged offense the ratio of alcohol in the blood of such person was more than seven-hundredths of one per cent of alcohol, by weight, but less than ten-hundredths of one per cent of alcohol, by weight." Subsection (d) (3) provides similarly that "evidence that at such time the ratio of alcohol in the blood was more than seven-hundredths of one per cent of alcohol, by weight, but less than ten-hundredths of one

per cent of alcohol, by weight, shall constitute impairment within the meaning of this section." Thus, the statutory definition of the offense authorizes a conviction only when an operator's blood alcohol ratio falls between the prescribed limits of .07 and .1 percent. The offense of driving while impaired is not otherwise defined.

The majority opinion, nonetheless, holds that the defendant, whose blood alcohol ratio was .165 percent, according to the only evidence submitted on that subject, would have been entitled to have the jury instructed to consider finding her guilty of driving while impaired as a lesser offense included in the charge of operating under the influence of intoxicating liquor, except that the arresting officer's testimony indicates that she, "irrespective of the blood alcohol level, was quite intoxicated." The opinion does not attempt to define the offense of operating while impaired in the context of a blood alcohol ratio of .165 percent or provide any standards for differentiating the more serious offense of operating under the influence, leaving the trial courts wholly without guidelines for instructing jurors where blood tests indicate a level of .1 percent or higher. I fail to understand how giving the trier the alternative of impairment as a lesser included offense in cases where there is no evidence of a blood alcohol ratio falling between .07 and .1 percent can be reconciled with the statutory definition of that offense.

The majority concludes that the "possibility that [the defendant] was merely impaired, and not under the influence, cannot be excluded as a matter of law." The opinion nevertheless proceeds to exclude that possibility as a matter of law. It justifies the refusal of the trial court to submit impairment in violation of subsection (b) as a lesser offense on the ground that the testimony of the arresting officer indicated that the defendant was "quite intoxicated." This court has no authority to

resolve disputed issues of fact or to assess the credibility of witnesses. The fact that the officer's testimony "was unrebutted by the defendant" does not mean that the jurors were obligated to believe it. Implicit in the view of the majority is the notion that an appellate court may effectively direct a guilty verdict upon a charge of operating under the influence whenever the testimony indicates an accused to have been "quite intoxicated," as it ordinarily does. Such an approach in my judgment seriously impairs the constitutional right of jury trial in criminal cases.

Despite my disagreement with the majority, I would reach the same result on the ground that there is no evidence to support a finding that the defendant's blood alcohol ratio fell between the limits of .07 percent and .1 percent as prescribed for the offense of driving with impaired ability to operate a motor vehicle. The record, therefore, is devoid of any evidence to support a conviction of that offense and the trial court properly refused to submit that alternative to the jury. *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). Accordingly, I agree with the result.