STATE OF CONNECTICUT *v.* STEPHEN J. MARTIN
(5815)

SPALLONE, BIELUCH and STOUGHTON, Js.

Argued December 17, 1987—decision released June 28, 1988

*Carl J. Schiessl,* with whom, on the brief, was *John J. Carta, Jr.,* for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, was *Bernadette Conway,* deputy assistant state's attorney, for the appellee (state).

STOUGHTON, J. The defendant was convicted, after a trial to a jury of six, of operating a motor vehicle while under the influence of intoxicating liquor and of interfering with a police officer, in violation of General Statutes §§ 14-227a (a) and 53a-167a, respectively. He appeals from the judgment of conviction and assigns as error the following: (1) the trial court's decision to admit evidence of the defendant's refusal to submit to chemical blood testing in that he was not specifically informed that, owing to a previous conviction of operating under the influence, he faced automatic suspension of his license for one year, rather than six months, and its instruction that the jury might draw inferences from such refusal; (2) the trial court's refusal to charge the jury on driving while impaired, General Statutes § 14-227a (b), as a lesser included offense of driving under the influence, General Statutes § 14-227a (a); (3) the trial court's charge to the jury on the credibility of witnesses; and (4) the trial court's allowing the state to inquire as to the nature of the defendant's prior contact with the officer who pulled the defendant over on the night of his arrest. We find no error.

The jury reasonably could have found the following facts from the evidence adduced at trial. The defend-

ant was traveling northbound on Route 149 in East Haddam at approximately 10 p.m. on August 31, 1986. As he approached an intersection, he passed through police radar, which clocked the defendant's vehicle at 62 miles per hour. The speed limit at that section of Route 149 was 30 miles per hour.

The defendant drove slightly beyond the intersection, then turned back and drove down the lane which intersected Route 149. The officers who had clocked the defendant's vehicle followed him and signalled the defendant, with both headlights and strobe lights, to pull over. When the defendant failed to stop after approximately a tenth of a mile, the officers turned on the siren. The defendant stopped gradually.

One of the officers approached the driver's side of the car and requested the defendant's license and registration. The defendant responded to this request by stating, "What for? I'm going home. Don't bother me." The defendant indicated that he was just one quarter of a mile from home and asked the officer to "give [him] a break." The officer again requested his license and registration, whereupon the defendant refused and screamed profanities at the officer. When the defendant refused the officer's third request for his license and registration, the officer asked him to step out of the car. The defendant told the officer to get away from his car and declared that he was going home. After noticing the defendant's slurred speech, the strong odor of alcohol about him, and his vituperative demeanor, the officer concluded that the defendant was intoxicated and decided to arrest him for driving under the influence.

The officer opened the car door, shifted the car into park and turned the ignition off. He told the defendant that he was under arrest and attempted to put handcuffs on him. The defendant proceeded to wrap

his arm around the steering wheel and began to fight with the officer. The officer who remained in the patrol car radioed for assistance while the other officer continued in his attempts to extricate the defendant from his car. Only when additional officers arrived were the police able to remove the defendant from the vehicle.

The defendant was placed in the back of a patrol car, where he was advised of his *Miranda* rights. A state trooper arrived on the scene and the defendant persisted in behaving in a belligerent manner, flailing and kicking at the officers and at the interior of the patrol car. Plastic cuffs were placed around the defendant's legs to prevent him from injuring himself or others. On the basis of what the state trooper observed and what the other officers had told him, the trooper decided to arrest the defendant for interfering with an officer. Apart from the defendant's obstreperous behavior, the state trooper also noted that the defendant had a very strong odor of alcohol, that his eyes were bloodshot and glassy, that his speech was slurred and that he exhibited wide mood swings. He described the defendant's gait as "wavering" and "unsteady."

At state police barracks, the defendant was read an "implied consent" form for the administration of a chemical blood alcohol test.[1] The defendant requested, and was given, the opportunity to confer with his attor-

---

[1] The "implied consent form" which was read to the defendant provided as follows: "You're under arrest for operating a motor vehicle while under the influence of intoxicating liquor, drugs, or both. Connecticut law states that you are deemed to have given your consent to a chemical analysis of your blood, breath, or urine. I request that you submit to such a test. If you refuse to submit to this test, the test will not be given. Such refusal will result in the immediate revocation of your operator's license, or nonresident operating privilege for twenty-four hours, and will further result in the suspension of your license or nonresident operating privilege *for at least six months.* Also, if you refuse to submit to such test, your refusal is admissible against you in a criminal prosecution. Do you understand this? Will you submit to a chemical test or analysis?" (Emphasis added.)

ney before he decided whether to submit to such a test. After he spoke to his lawyer, he refused to take the test.

I

### THE ADMISSION INTO EVIDENCE OF THE DEFENDANT'S REFUSAL TO SUBMIT TO CHEMICAL TESTING

General Statutes § 14-227b (b) provides that evidence of a defendant's refusal to submit to a blood, breath, or urine test will be admissible against him provided certain procedural safeguards are followed. The relevant portion of § 14-227b (b) in the present case is that portion which requires the police to inform a defendant that his or her refusal to take such a test will result in a suspension of the defendant's license in accordance with the provisions of subsections (d), (e) or (f) of § 14-227b. The defendant's contention is that evidence of his refusal ought to have been suppressed because the police did not specifically inform him that he faced an automatic license suspension of one year rather than six months, owing to his prior drunk driving conviction and his previous participation in a pretrial alcohol education program. We disagree.

The implied consent form which was read to the defendant informed him that his refusal to submit to the test would result in the immediate revocation of his license for twenty-four hours, and would also result in the suspension of his license for at least six months. It also apprised the defendant that such a refusal could be admissible against him. The defendant said he understood the warnings and, after conferring with his attorney, refused to submit to the test. We find that the defendant was adequately informed of the two major consequences of refusing to comply with our "implied consent" statute: (1) that a refusal may be admitted against him in a criminal prosecution; and (2) that his license to operate a motor vehicle would be suspended for at least six months.

The defendant, seizing upon the clause which states that an individual might lose his license "in accordance with the provisions of subsection (d), (e) or (f) [of § 14-227b]," contends that the police ought to have informed him that he faced suspension of his license for one year because of his previous violation. We decline to read the statute this way. To interpret General Statutes § 14-227b (b) in this manner would result in the requirement that a hypertechnical and burdensome warning be administered as a prerequisite to the admission of evidence of refusal. At the very least, such an interpretation would require an arresting officer to determine a defendant's criminal record, ascertain the maximum potential suspension period and inform the defendant of the period of suspension he or she faces. Such precise warnings realistically cannot be expected of police officers in the course of making an arrest.

We cannot accept the argument that the legislature, by making reference to subsections (d), (e) and (f), intended that defendants be informed of the provisions found therein. In fact, those subsections deal largely with the procedures to be followed by the police and by the commissioner of motor vehicles subsequent to a license revocation. Moreover, prior to 1983, the police were expressly required to inform a defendant of the duration of the suspension faced. See Public Acts 1982, No. 82-408, § 4 (b). This provision was eliminated by Public Acts 1983, No. 83-534, which strongly indicates an intention to abandon the very requirement which the defendant argues exists. *Clark* v. *Muzio,* 40 Conn. Sup. 512, 517, 516 A.2d 160 (1986), aff'd, 14 Conn. App. 212, 540 A.2d 1063 (1988). The critical information to be given defendants under such implied consent statutes is the *fact* of suspension rather than its duration. Id. There was no error in admitting testimony concerning the defendant's refusal to submit to such a test or in charging the jury as to what inferences might be drawn from such a refusal.

## II

### The Trial Court's Refusal to Charge on Driving While Impaired as a Lesser Included Offense of Driving While Under the Influence

The defendant's second claim of error fails because he did not submit an appropriate request to charge as required by Practice Book § 854 and *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).[2] It is well established that a defendant is entitled to a lesser included offense instruction only if four requirements are satisfied: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without first having committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense, but guilty of the lesser." *State* v. *Whistnant,* supra.

A request to charge is not appropriate within the meaning of *Whistnant* unless it complies with Practice

---

[2] The defendant's request to charge on this offense was as follows: "2. In addition to § 14-227a (a) which, in order to find the Defendant guilty, requires proof beyond a reasonable doubt that the Defendant was operating a motor vehicle while under the influence of intoxicating liquor, you are also permitted to consider the lesser included [offense] of operation while impaired. Section 14-227a (b) provides in part, that 'No person shall operate a motor vehicle on a public highway of this State . . . while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor.' In order to find the Defendant guilty under this section you need not find that the Defendant was operating while under the influence of intoxicating liquor but only that his ability to operate such motor vehicle was impaired."

Book § 854 (formerly § 852). *State* v. *McIntosh,* 199 Conn. 155, 158, 506 A.2d 104 (1986).

Practice Book § 854 (requires that every request to charge be set forth in separately numbered paragraphs, "each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition would apply." The request to charge submitted by the defendant failed to provide the court with any factual basis for his request. *State* v. *Ostroski,* 201 Conn. 534, 558, 518 A.2d 915 (1986). Moreover, the defendant failed to provide any legal authority from any jurisdiction to support his argument that operating while impaired is a lesser included offense of operating while under the influence, apart from the citation to General Statutes § 14-227a (b) itself. For this reason alone, the defendant was not entitled to the requested instruction. *State* v. *McIntosh,* supra, 160–61.[3]

The state has pressed the claim that the defendant has not complied with the first prong of the *Whistnant*

---

[3] In a recent case, *State* v. *Gonzalez,* 14 Conn. App. 216, 541 A.2d 115 (1988), we reviewed precisely the same issue the defendant now raises. The defendant therein did cite cases from other jurisdictions which supported his theory that "impairment" constituted a lesser included offense of operating while under the influence or operation while intoxicated, in addition to citing *State* v. *Hancich,* 200 Conn. 615, 620, 513 A.2d 638 (1986), in both his request to charge and in his amended request to charge. Moreover, the defendant's requested instructions provided a coherent definition of "impairment" in relation to operating while under the influence. While the majority was not persuaded by his arguments, we found that his request to charge was sufficient to merit review. Here, the defendant's request to charge is so fatally inadequate that we find that his claim does not merit review, particularly in light of our recent decision in *State* v. *Robinson,* 14 Conn. App. 40, 45–46, 539 A.2d 606 (1988). We do not suggest that a defendant must provide authority from other jurisdictions in a request to charge where no authority exists in Connecticut. He must attempt, however, to furnish the court with some legal theory, in light of the facts in a particular case, to justify a requested instruction.

test. Even had it not done so, however, this court has recently held, "[t]his duty [compliance with Practice Book § 852 and *State* v. *Whistnant*] is not optional, nor can it be waived by the state. The defendant must provide the trial court with the factual and legal basis for the charge before an appellate court can find error in the court's refusal to give the charge as requested." *State* v. *Robinson,* 14 Conn. App. 40, 45–46, 539 A.2d 606 (1988). The trial court did not err.

### III

### THE COURT'S CHARGE ON THE CREDIBILITY OF WITNESSES

The defendant's third claim on appeal is that the trial court erred in its charge to the jury on the standard of proof required in the jury's determination of the credibility of witnesses. Specifically, the defendant challenges that portion of the charge in which the court instructed the jury as follows: "The testimony of each [witness] is to be weighed for what it seems to you to be worth in the light of its character, the demeanor of the witness as it bears on credibility, the substance of the testimony and *the probability or improbability* that what the witness said is true." (Emphasis added.) The defendant did not object or except to this portion of the charge, but maintains that this claim is reviewable under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), as a claimed deprivation of a constitutional right. We agree and review this claim because the fundamental constitutional right that the state prove the guilt of a defendant beyond a reasonable doubt is implicated. *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Miller,* 202 Conn. 463, 489–90, 522 A.2d 249 (1987); *State* v. *McDonough,* 205 Conn. 352, 354, 533 A.2d 857 (1987), cert. denied, U.S. , 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988).

The defendant maintains that the effect of the court's charge was to allow the jury to find facts using a stan-

dard of probability or improbability rather than a standard of proof beyond a reasonable doubt. He argues that since the outcome of the case rested on the credibility of the police officers as against the credibility of the defendant, the standard of proof to be applied in establishing a witness' credibility was vital. He asserts that under the circumstances, "it was reasonably possible that the jury was misled by the instruction into misunderstanding an issue that has fundamental constitutional significance." *State* v. *Torrence,* 196 Conn. 430, 436, 493 A.2d 865 (1985). We disagree.

We note at the outset that such instructions have received much criticism as "comparative credibility" charges which have the potential for diluting the state's burden of proof. *State* v. *Orsini,* 187 Conn. 264, 276, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982). In such situations, the question to be resolved is whether there is any reasonable possibility that the charge as a whole could have misled the jury into applying a standard other than proof beyond a reasonable doubt. Id., 277. We have recently articulated a different framework for conducting inquiries into claimed federal constitutional instructional errors. Specifically, we ask whether " ' "the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." ' *Rose* v. *Clark,* 478 U.S. 570, 576, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), quoting *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)." *State* v. *Coleman,* 14 Conn. App. 657, 679, 544 A.2d 194 (1988).

The record indicates that the instructions, taken as a whole, could not reasonably have resulted in lessening the state's burden of proof. The transcript of the instructions themselves is approximately eighteen pages long, and therein the court mentioned eight times

that the state had the burden of proving each element of each charge beyond a reasonable doubt.

The court further instructed the jury on the presumption of innocence enjoyed by the accused and that the presumption applied to all of the elements necessary to constitute the offense charged. The jury was also informed that the defendant was in no way obliged to take the witness stand on his own behalf. Moreover, the court instructed the jury that testimony from police officers is to be given no special weight and that such testimony should be as carefully scrutinized as that of other witnesses. On these facts, the single disputed statement could not be regarded as diluting the state's burden. There is no merit to this claim.

## IV

### THE TRIAL COURT'S ALLOWING THE STATE TO INQUIRE AS TO THE NATURE OF THE DEFENDANT'S PRIOR CONTACT WITH CONSTABLE MILARDO

The defendant's final claim on appeal is that the trial court erred in admitting certain evidence from which the jury could infer that he had previously been arrested for operating under the influence. The defendant did not object to the state's line of questioning nor did he except to the trial court's ruling. Moreover, the rule pertaining to the admission of evidence of other crimes committed by defendants is a rule of evidence rather than one of constitutional dimension. *State* v. *Smith*, 198 Conn. 147, 156, 502 A.2d 874 (1985); *State* v. *Rodriguez*, 10 Conn. App. 357, 358, 522 A.2d 1250 (1987). The defendant also failed to brief the issue of the reviewability of this claim on appeal. We will not review this claim in light of the defendant's failure to object below and his failure to brief the issue of reviewability here. We note, however, that the inquiry permitted by the court did not disclose to the jury the fact of the defendant's prior arrest for driving while under

the influence or any other offense. The court allowed the state to elicit testimony that the defendant's prior contact with the officer who stopped him was on a non-social basis and was permitted as a means of responding to the suggestion created by the defendant's testimony that his arrest was the result of animosity toward him or the reputation of the officer for brutality. On these facts, the inquiry did not undermine the defendant's right to a fair trial.

There is no error.

In this opinion SPALLONE, J., concurred.

BIELUCH, J., dissenting. I disagree with the conclusion of the majority that the trial court did not err in refusing to charge on driving while impaired as a lesser included offense of driving while under the influence of liquor. The sole basis for this conclusion was that the defendant's request to charge failed to comply with the requirement of Practice Book § 854 that each proposition of law state "the citation of authority upon which it is based, and the evidence to which the proposition would apply."

The defendant was arrested on August 31, 1986, for operating while under the influence of intoxicating liquor, in violation of General Statutes § 14-227a (a), and for interfering with an officer, in violation of General Statutes § 53a-167a, on the basis of his motor vehicle operation, his physical condition and appearance, and his unruly and belligerent conduct. He refused to submit to a chemical test for alcohol after his arrest.

General Statutes § 14-227a (a) provides: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public high-

way of this state . . . (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight." Since there was no alcohol test taken in this case, the first specified manner of violation of this statute was the issue before the jury.

Subsection (b) of § 14-227a provides: "No person shall operate a motor vehicle on a public highway of this state . . . while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor. A person shall be deemed impaired when at the time of the alleged offense the ratio of alcohol in the blood of such person was more than seven-hundredths of one per cent of alcohol, by weight, but less than ten-hundredths of one per cent of alcohol, by weight." In the absence of an alcohol test, the per se statutory violation is not relevant in this discussion.

On the basis of § 14-227a (b), the defendant submitted the following request to charge: "In addition to § 14-227a (a) which, in order to find the defendant guilty, requires proof beyond a reasonable doubt that the defendant was operating a motor vehicle while under the influence of intoxicating liquor, you are also permitted to consider the lesser included offense of operation while impaired. Section 14-227a (b) provides in part that 'No person shall operate a motor vehicle on a public highway of this state . . . while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor.' In order to find the defendant guilty under this section you need not find that the defendant was operating while under the influence of intoxicating liquor but only that his ability to operate such motor vehicle was impaired."

Unlike the trial court, the majority opinion does not reach the merits of the defendant's claim that in the

absence of a blood alcohol test, driving a motor vehicle while impaired by the consumption of intoxicating liquor, in violation of § 14-227a (b), is a lesser included offense of operating a motor vehicle while under the influence of intoxicating liquor, in violation of § 14-227a (a). A recent review of the legislative history of § 14-227a (b); see *State* v. *Gonzalez,* 14 Conn. App. 216, 541 A.2d 115 (1988) (*Bieluch, J.,* dissenting); led to my conclusion that in the absence of blood alcohol evidence, the operation of a motor vehicle by a person while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor; General Statutes § 14-227a (b); is a lesser included offense of operation under the influence of intoxicating liquor, General Statutes § 14-227a (a). *State* v. *Gonzalez,* supra, 224.

The majority opinion supports the erroneous refusal of the lower court to charge on the lesser included offense, not on the merits of the charge, but for the asserted procedural deficiency that the defendant failed to "provide the trial court with the factual and legal basis for the charge." Practice Book § 854. This misconstrues the application and requirements of the procedural rule. "The ever increasing refinement of our law justifies the cooperation of counsel in stating requests for jury instructions, and this cooperation is mandated, at least to the extent of substantial compliance with Practice Book § 852 [now § 854]." *State* v. *McIntosh,* 199 Conn. 155, 160–61, 506 A.2d 104 (1986). The purpose of the rule is to allow the trial court to know the precise point to which the defendant wished to call attention. Id., 161.

The lesser included offense issue before the trial court turned on a clear question of law. The majority opinion misapplies the rule of Practice Book § 854 to the facts and issue in this case in holding: "The request to charge submitted by the defendant failed to provide the court with any factual basis for his request. *State*

v. *Ostroski*, 201 Conn. 534, 558, 518 A.2d 915 (1986). Moreover, the defendant failed to provide any legal authority from any jurisdiction to support his argument that operating while impaired is a lesser included offense of operating while under the influence, apart from the citation to General Statutes § 14-227a (b) itself.'' The record discloses that the issue before the court was one of law, and not of facts. The same evidence applied to both offenses. The only question presented by the defendant's request to charge, and ruled on by the trial court, was one of law. The majority's requirement that a request to charge be supported by ''legal authority from any jurisdiction,'' in addition to the statutory citation, is without foundation. Statutory authority alone is sufficient to support a request to charge; its weight is also greater than judicial authority for that purpose.

The trial court ruled on the defendant's request to charge upon the completion of final arguments to the jury and in their absence. It recognized ''the precise point to which the defendant wished to call attention''; *State* v. *McIntosh*, supra, 161; as one of law when it held: ''[S]ince there was no chemical test, although I am familiar with the case about the lesser included charge that it is not automatically out, because there is no chemical test here, I do not feel that it is to be a part of this case, so I will not charge on that.'' The trial court ruled on the defendant's request to charge as a matter of law, and so should this court on the defendant's appeal from that holding.

The trial court also erred when it instructed the jury on the offense of operation of a motor vehicle while under the influence of intoxicating liquor.[1] This court

---

[1] The court's entire charge defining operation while under the influence of intoxicating liquor for a conviction under General Statutes § 14-227a (a) was as follows:

"What does under the influence of intoxicating liquor mean, and you are finally going to get the legal definition. Driving while under the influence

on an appeal before it is not bound to consider a claim unless it was distinctly raised at the trial or arose subsequent thereto. It may, however, in the interest of justice notice plain error not brought to the attention of the trial court. Practice Book § 4185.

In defining the elements of the offense of driving under the influence of intoxicating liquor, the court included this instruction: "If intoxicating liquor has so

of intoxicating liquor or under the influence of liquor means that the driver has become so affected in his mental, physical, or nervous processes, that he lacks to an appreciable degree the ability to function properly in relation to the operation of his motor vehicle. All right.

"Now, it is a matter of common knowledge that the susceptibility to intoxicating liquor varies in individuals who have imbibed. The law has not made it a crime for a person to drive his automobile after he has been drinking, nor has it specified the number of drinks which a man might take in order to produce that state, which is defined to be under the influence of intoxicating liquor, but it is a well known fact that intoxicating liquor has such a power of affecting the normal reactions and responses of the brain and body of the person that it is against public policy to allow any person to drive his automobile on a public highway when he is, in fact, under the influence of intoxicating liquor. When a person takes intoxicating liquor, the effect upon his driving an automobile may manifest itself in several ways; impaired judgment of speed or distance, lack of coordination, a sense of exhilaration, which induces recklessness, and other elements which common observation will suggest to you. The driving of an automobile when liquor has produced these effects in an individual is unlawful. It is not necessary that the accused be drunk, as the word is commonly understood. However, the expression, under the influence of intoxicating liquor, does cover not only all the well known and easily recognized conditions and degrees of intoxication, but also any abnormal mental or physical condition which is the result in indulging in intoxicating liquor, and which tends to deprive a person of that clearness of intellect, judgment, and control which he would otherwise possess.

"If intoxicating liquor has so far affected the nervous system and brain of the driver of a motor vehicle as to *impair to an appreciable degree his ability to operate the car,* as he would in the full possession of his faculties, then such a driver *is under the influence of intoxicating liquor, within the meaning of the statute.*

"Now, once again, driving under the influence of intoxicating liquor means the driver has become so affected in his mental, physical, or nervous processes that he lacks to an appreciable degree the ability to function properly in relation to the operation of his automobile." (Emphasis added.)

far affected the nervous system and brain of the driver of a motor vehicle as to *impair to an appreciable degree his ability to operate the car,* as he would in the full possession of his faculties, then such a driver *is under the influence of intoxicating liquor, within the meaning of the statute.*" (Emphasis added.) Such a charge is appropriate in the consideration of the offense of operating a motor vehicle while impaired, but constitutes prejudicial error when given to a jury for its deliberation on a prosecution for operating a motor vehicle while under the influence of intoxicating liquor.

Reviewing the entire charge, I would find that the commingling into the court's charge on operation of a motor vehicle while under the influence of intoxicating liquor an instruction defining the offense of operation while impaired as proof that "such a driver is under the influence of intoxicating liquor, within the meaning of the statute," was not, on the whole record here, harmless beyond a reasonable doubt. See *Rose* v. *Clark,* 478 U.S. 570, 576, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986); *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); *State* v. *Coleman,* 14 Conn. App. 651, 679, 542 A.2d 752 (1988).

For these reasons, I would find error.