ZANNIS KALAMS *v.* JOHN J. GIACCHETTO

ZANNIS KALAMS ET AL. *v.*
JOHN J. GIACCHETTO
(SC 17025)

Sullivan, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued December 8, 2003—officially released March 23, 2004

*Wesley W. Horton,* with whom were *Kimberly A. Knox* and, on the brief, *Barbara Ellis, Andrea E. Merkle* and *Jennifer Milici,* legal interns, for the appellants (plaintiffs).

*Louis B. Blumenfeld,* with whom, on the brief, was *Lorinda S. Coon,* for the appellee (defendant).

*Opinion*

SULLIVAN, C. J. This appeal arises from two actions brought by the plaintiff, Zannis Kalams, a physician, against the defendant, John J. Giacchetto, who is also a physician. One of the cases involves a claim of medical malpractice and the other involves a claim of libel.[1] The cases were consolidated for trial. The jury returned verdicts for the defendant in both cases, and the trial court rendered judgments in accordance with the verdicts. The plaintiff then brought this appeal[2] claiming that the trial court improperly: (1) precluded his expert witness from testifying on the issue of causation in the medical malpractice action; (2) instructed the jury that the plaintiff must prove causation in the action for libel per se; and (3) granted eight peremptory challenges to each party. We affirm the judgment of the trial court.

I

We first address the plaintiff's claim that the trial court improperly granted the defendant's motion in limine precluding testimony by his expert witness, Thomas J. Gill, a physician specializing in orthopedic surgery, that the defendant's alleged deviation from the standard of care caused the plaintiff's injuries. We con-

---

[1] Mary Kalams, Zannis Kalams' wife, was also a plaintiff in the medical malpractice action and is a party to this appeal. Because this appeal does not involve any distinct claims by Mary Kalams, we refer to Zannis Kalams as the plaintiff.

[2] The plaintiff appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

clude that, even if we assume that the ruling was improper, it was harmless.

The record reveals the following facts and procedural history relevant to this claim. On October 24, 2000, the plaintiff filed a complaint alleging that the defendant had failed to meet the applicable standard of care for health care providers when he performed two surgeries to repair an injury to the plaintiff's right shoulder. The plaintiff disclosed on October 31, 2001, that Gill would testify on the issue of whether the defendant deviated from the proper standard of care. On September 30, 2002, the day before jury selection was scheduled to begin, the plaintiff filed an "Emergency Request for Continuance or Such Other Relief as May be Appropriate" in which he requested permission to amend his expert disclosure to indicate that Gill would be testifying on the issue of causation.[3] The trial court, *Martin, J.*, denied the request on the ground that the case already had been continued several times and the defendant would be prejudiced by the late disclosure.

During the trial, the defendant filed a motion in limine seeking to preclude Gill from testifying on the issue of causation. The trial court, *Corradino, J.*, heard arguments on the motion. Counsel for the plaintiff argued that the motion should be denied because the October 31, 2001 disclosure had been sufficient to put the defendant on notice that Gill would be testifying on the entire liability aspect of the case, including causation. The court ruled that Judge Martin's earlier ruling on the plaintiff's motion for a continuance was binding on the

---

[3] "[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. . . . Generally, expert testimony is required to establish both the standard of care to which the defendant is held and the breach of that standard." (Internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 254-55, 811 A.2d 1266 (2002).

question of whether Gill should be allowed to testify on the issue of causation and granted the motion in limine.

Gill testified that he treated the plaintiff after the defendant had performed the two shoulder surgeries on him. When the plaintiff first came to Gill's office, he was unable to move his right arm. Gill performed exploratory surgery on the plaintiff's shoulder and determined that his deltoid muscle had detached from the bone as a complication of the surgeries performed by the defendant. Gill testified that the defendant had deviated from the standard of care by failing to diagnose the detachment of the muscle and by failing to treat that condition. The plaintiff attempted to question Gill on whether the defendant's alleged deviation from the standard of care had caused the plaintiff's injuries. The trial court sustained the defendant's objections to the questions.

The plaintiff also called the defendant as a witness. The defendant testified that if a detached deltoid muscle is not surgically reattached to the bone, it will retract from the bone and atrophy. Eventually, the detachment will become irreparable.

After the plaintiff had rested his case, the defendant made a motion for a directed verdict on the ground that the plaintiff had presented no evidence on the issue of causation. The plaintiff argued that expert testimony on causation is not always required.[4] He also argued,

---

[4] "An exception to the general rule [requiring] expert medical opinion evidence [on causation] is when the medical condition is obvious or common in everyday life. *State* v. *Orsini*, 155 Conn. 367, 372, 232 A.2d 907 (1967); see also *Parker* v. *Supermarkets General Corp.*, 36 Conn. App. 647, 652 A.2d 1047 (1995). Similarly, expert opinion may not be necessary as to causation of an injury or illness if the plaintiff's evidence creates a probability so strong that a lay jury can form a reasonable belief. *Gannon* v. *Kresge Co.*, 114 Conn. 36, 38, 157 A. 541 (1931). Expert opinion may also be excused in those cases where the professional negligence is so gross as to be clear even to a lay person. *Puro* v. *Henry*, 188 Conn. 301, 305, 449 A.2d 176 (1982); *Slimak* v. *Foster*, 106 Conn. 366, 370, 138 A. 153 (1927)." (Internal quotation marks omitted.) *Sherman* v. *Bristol Hospital, Inc.*, 79 Conn. App. 78, 89, 828 A.2d 1260 (2003).

in the alternative, that the defendant himself had testified as an expert on that issue. The court reserved its ruling on the motion pending the jury verdict pursuant to Practice Book § 16-37.[5]

After the conclusion of evidence and the instructions to the jury, the trial court provided the jury with a verdict form containing two interrogatories. The first interrogatory asked: "In the medical malpractice claim, did [the] plaintiff prove by a preponderance of the evidence that [the defendant] was negligent in failing to comply with the standard of care applicable to him?" The second interrogatory asked: "In the medical malpractice claim, did [the] plaintiff prove by a preponderance of the evidence that [the defendant's] negligence was a proximate cause of [the plaintiff's] damages?" The jury answered "no" to both interrogatories. Accordingly, the jury returned a verdict for the defendant in the medical malpractice action.

At the outset of our analysis, we set forth the applicable standard of review. It is well settled that "we will set aside an evidentiary ruling only when there has been a clear abuse of discretion." (Internal quotation marks omitted.) *State* v. *Lugo*, 266 Conn. 674, 700, 835 A.2d 451 (2003). "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that

---

[5] Practice Book § 16-37 provides in relevant part: "Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case in chief is denied or for any reason is not granted, the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. . . ."

the [excluded] evidence would have affected the final result, its exclusion is harmless." (Citations omitted; internal quotation marks omitted.) *Vasquez* v. *Rocco*, 267 Conn. 59, 71, 836 A.2d 1158 (2003); see also *State* v. *Tatum*, 219 Conn. 721, 738, 595 A.2d 322 (1991) (burden is on party claiming nonconstitutional evidentiary error to show that "it is more probable than not that the erroneous action of the court affected the result").

The plaintiff argues that Judge Corradino improperly determined that Judge Martin's ruling on the plaintiff's motion for a continuance to amend his expert disclosure was binding on the court in ruling on the defendant's motion in limine. The plaintiff argues that the ruling was not binding because Judge Martin had never addressed the dispositive issue in the motion in limine, that is, whether the plaintiff's initial expert disclosure had given fair notice to the defendant that Gill would testify on the issue of causation.

We conclude that we need not consider the merits of the trial court's ruling on the motion in limine because, even if we assume that the ruling was improper, it was harmless. The jury was not required to reach the issue of causation because, as evidenced by its answers to the jury interrogatories, it first determined that the defendant had not breached the standard of care. Accordingly, we conclude that it is not reasonably probable that testimony on causation would have affected the result.

The plaintiff argues that the exclusion of testimony on causation was harmful because Gill was the plaintiff's only expert witness and his failure to testify on an essential element of the medical malpractice claim was bound to have undermined his credibility in the eyes of the jurors. Counsel for the plaintiff was not permitted, however, to ask Gill about causation. We find it unlikely that the jurors discounted otherwise

credible testimony by Gill as to the alleged deviation from the standard of care simply because he did not provide an opinion on an issue about which he was not asked. Moreover, we will not assume that the jury engaged in improper speculation as to the reason that the questions were not permitted.

The plaintiff further argues that, in light of the gap in Gill's testimony, "the plaintiff's case must have been viewed [by the jury] as a travesty of justice." We are not convinced that the purported gap in Gill's testimony necessarily would have been perceived by the jury as an inexplicable and glaring defect in the plaintiff's case. Indeed, in contrast to the plaintiff's claim in his brief to this court that his "case went to the jury with *no* evidence on causation"; (emphasis added); he argued to the trial court in opposition to the defendant's motion for directed verdict that the evidence he had presented through the defendant's testimony was sufficient to establish causation. Moreover, although expert testimony on causation generally is required in medical malpractice cases, there are, as we have noted, exceptions to that rule. See footnote 4 of this opinion. We express no view on whether expert testimony on the issue of causation was required in this case, but the fact that it is not always required tends to undermine the plaintiff's argument that Gill's failure to give an opinion as to causation necessarily destroyed his credibility. Accordingly, we affirm the trial court's granting of the defendant's motion in limine.

## II

We next address the plaintiff's claim that the trial court improperly instructed the jury that causation is an element of libel per se. The defendant counters that (1) the claim was not preserved and (2) under the general verdict rule, this court must presume that the jury found in the defendant's favor on the proper ground

that he had established his special defense that the allegedly libelous communication was protected by a privilege arising from the exercise of his professional duty. We agree with the defendant's second argument and, accordingly, need not consider the merits of the plaintiff's instructional claim.

The record reveals the following facts and procedural history relevant to this claim. On October 25, 2000, the plaintiff filed a complaint alleging that the defendant had written in the plaintiff's short-term surgical record, in a section referring to his past medical history, the word "dementia." The plaintiff alleged that the publication of this word in his medical record was false and malicious and had caused him great annoyance, embarrassment and shame. The defendant admitted that he had made the notation but denied that it was false and malicious. He also alleged as a special defense that "the occasion of its publication in a confidential medical record by the defendant, the plaintiff's treating physician, to other treating health care providers of the plaintiff, gives rise to a privilege."

The plaintiff claims that, at the end of the evidence phase of trial, he filed a request to charge on the elements of libel per se with the clerk of the Superior Court. The court file, however, contained no such document. Accordingly, the plaintiff filed a motion for rectification with the trial court requesting that the court rectify the record by incorporating into it the plaintiff's request to charge. The plaintiff attached to his motion a letter from the defendant's appellate counsel representing that, although the defendant's trial counsel did not recall receiving a copy of the request to charge at the time of trial, he did recall discussing the libel charge in chambers with Judge Corradino and the plaintiff's trial counsel. On the basis of the representations of the parties, Judge Corradino rectified the record to reflect that the plaintiff's request to charge had been presented

to the court in chambers. In the absence of any formal fact-finding proceeding, however, he denied the request to rectify the record to indicate that the request to charge had been filed with the court clerk as required by Practice Book § 16-22.[6] The request to charge stated in relevant part: "To be defamatory it is not necessary that the communication of the word 'dementia' actually cause harm to another's reputation or deter third persons from associating or dealing with him."

The trial court instructed the jury as follows: "Now, if you conclude that a false defamatory statement was published by the defendant concerning the plaintiff and the elements of libel per se have been established, and if you further conclude that the defendant has not established that he had a privilege which would prevent the imposition of damages, then you will go on to consider the remainder of this charge regarding causation and damages. In other words, just because a plaintiff has proven a theory of liability and there is no privilege regarding that claim that the defendant can establish, the plaintiff must still prove causation before he can recover damages for libel per se. In other words, if a plaintiff proves a particular theory of liability, here libel per se, that would still not entitle a plaintiff to recover damages. The plaintiff must still prove by a preponderance of the evidence what we call causation. Causation that the wrongful conduct of the defendant caused his . . . damages. We call this legal cause and [it] has two components: Cause in fact and proximate cause." The plaintiff did not take an exception to the charge as given.

We assume, without deciding in this case, that the plaintiff's claim was preserved by presenting the request to charge to the trial court, even though it has not been

---

[6] The court offered to hold a hearing to determine whether the request to charge had been filed with the court clerk. The parties apparently declined the offer as there is no evidence in the record that such a hearing ever was held.

established that he filed the request with the court clerk as required by Practice Book § 16-22.[7] We conclude, however, that we need not address the merits of the claim because, under the general verdict rule, we presume that the jury reached its verdict on a proper ground; see *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 371–72, 727 A.2d 1245 (1999); namely, that the defendant had proved his special defense that the communication was covered by a privilege.

"Under the general verdict rule, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels. . . .

"On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . .

---

[7] The defendant argues that this claim was not preserved because the trial court instructed the jury, as requested by the plaintiff, that the plaintiff was not required to prove special damages. That instruction, however, did not incorporate the plaintiff's requested instruction that it was not necessary for him to prove that the alleged libel actually caused harm to his reputation or deterred third persons from associating with him. Accordingly, we reject this argument.

"In the trial court, the rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially did not depend upon the trial errors claimed by the appellant. Thus, unless an appellant can provide a record to indicate that the result the appellant wishes to reverse derives from the trial errors claimed, rather than from the other, independent issues at trial, there is no reason to spend the judicial resources to provide a second trial. . . .

"Therefore, the general verdict rule is a rule of appellate jurisprudence designed to further the general principle that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . . A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. . . .

"This court has held that the general verdict rule applies to the following five situations: (1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." (Citations omitted; internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, supra, 248 Conn. 371–72. The present case falls under the fourth category; accordingly, the rule applies.

The defendant pleaded as a special defense that his writing of the word "dementia" on the plaintiff's medical chart was privileged because, in making the notation, he was discharging his professional duty to the plaintiff. The trial court instructed the jury that "communications by [physicians] to persons with a common interest in the

subject of the communication have a qualified privilege with regard to liability for libel. In other words, a [physician] may have a duty to give out information, even though defamatory, if there is a sufficiently important interest to protect, such as the care and safety of the patient. To be entitled to claim the physician/patient qualified privilege, the physician must demonstrate he was acting in a professional capacity and in good faith with respect to the defamatory words." The plaintiff did not take an exception to this instruction.

At trial, the defendant testified that when he had met with the plaintiff in preparation for his shoulder surgery, he observed that the plaintiff appeared to be having difficulty with his short-term memory and his ability to focus and follow directions. The plaintiff also appeared to be emotionally labile and flighty. The defendant also testified that patients with some degree of senile dementia frequently have difficulty in understanding and complying with medical instructions and may have an adverse reaction to anesthesia or hospitalization known as "sundowning," which can range from forgetfulness to delirium. He made the "dementia" notation in the plaintiff's medical history record because he wanted to alert the medical staff to those potential problems.

On the basis of this record, we conclude that the jury reasonably could have found that the defendant had established his special defense that the communication was covered by the qualified privilege. We therefore presume that the jury reached its verdict on this proper ground and need not consider the plaintiff's instructional claim.

### III

We next consider the plaintiff's claim that the trial court improperly granted eight peremptory challenges to each party instead of four challenges as provided by

General Statutes § 51-243.[8] We conclude that the trial court improperly determined that each party was legally entitled to eight peremptory challenges. We also conclude, however, that the impropriety was harmless.

The parties filed a stipulation in which they agreed to the following relevant facts. At some point before either party had exercised its fourth peremptory challenge, a dispute arose as to whether the parties were entitled to four peremptory challenges or eight. The defendant argued to the trial court that they were entitled to eight challenges because the trial involved two distinct causes of action. The plaintiff disagreed. The court, *Martin, J.*, ruled that each party was entitled to eight peremptory challenges as of right under *Marshall* v. *Hartford Hospital*, 65 Conn. App. 738, 783 A.2d 1085, cert. denied, 258 Conn. 938, 786 A.2d 425 (2001).[9] The

---

[8] General Statutes § 51-243 (a) provides: "In any civil action to be tried to the jury in the Superior Court, if it appears to the court that the trial is likely to be protracted, the court may, in its discretion, direct that, after a jury has been selected, two or more additional jurors shall be added to the jury panel, to be known as 'alternate jurors'. Alternate jurors shall have the same qualifications and be selected and subject to examination and challenge in the same manner and to the same extent as the jurors constituting the regular panel. In any case when the court directs the selection of alternate jurors, each party may peremptorily challenge four jurors. Where the court determines a unity of interest exists, several plaintiffs or several defendants may be considered as a single party for the purpose of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly. For the purposes of this subsection, a 'unity of interest' means that the interests of the several plaintiffs or of the several defendants are substantially similar. A unity of interest shall be found to exist among parties who are represented by the same attorney or law firm. In addition, there shall be a presumption that a unity of interest exists among parties where no cross claims or apportionment complaints have been filed against one another. In all civil actions, the total number of peremptory challenges allowed to the plaintiff or plaintiffs shall not exceed twice the number of peremptory challenges allowed to the defendant or defendants, and the total number of peremptory challenges allowed to the defendant or defendants shall not exceed twice the number of peremptory challenges allowed to the plaintiff or plaintiffs."

[9] Judge Martin made a notation on the stipulation stating that he had no reason to doubt the representations made by the parties in the stipulation,

court also granted a ninth challenge because three alternate jurors were to be selected. Each party exercised at least six challenges at trial.

Before considering the merits of the plaintiff's claim, we first address the proper standard of review. The plaintiff argues that the determination of the number of peremptory challenges to which a party is entitled is a question of law; therefore, our review is plenary. The plaintiff also implicitly argues that the granting of peremptory challenges to which the parties are not legally entitled is reversible error per se. The defendant urges us to review the trial court's actions under an abuse of discretion standard.

We conclude that, under the circumstances of this case, whether the trial court properly granted the additional challenges is a question of statutory interpretation over which our review is plenary. We also conclude, however, that the court's action is subject to harmless error analysis.

We first review the text of the governing constitutional and statutory law. Article first, § 19, of the constitution of Connecticut, as amended by article four of the amendments, provides in relevant part that "[i]n all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. . . ." General Statutes § 51-243 (a) provides in relevant part that "[i]n any case when the court directs the selection of alternate jurors, each party may peremptorily challenge four jurors. . . ." See also General Statutes § 51-241 ("[o]n the trial of any civil action to a jury, each party may challenge peremptorily three jurors").[10]

but that he had no independent recollection of the dispute over the number of challenges or his ruling on the matter.

[10] General Statutes § 51-241 provides: "On the trial of any civil action to a jury, each party may challenge peremptorily three jurors. Where the court determines a unity of interest exists, several plaintiffs or several defendants may be considered as a single party for the purpose of making challenges,

Both §§ 51-243 and 51-241 also provide that when multiple plaintiffs and multiple defendants share a unity of interest, the court may treat the parties as a single party for the purposes of granting peremptory challenges or it may allow additional challenges and allow them to be exercised separately or jointly.

The parties in the present case represented in their stipulation that the trial court relied on *Marshall* v. *Hartford Hospital,* supra, 65 Conn. App. 738, in determining that each party was entitled to eight challenges. That case involved a medical malpractice action against a physician and a hospital. The trial court ruled that no unity of interest existed between the defendants and allowed each defendant four challenges. Id., 741. The court directed a verdict in favor of the physician and the jury returned a verdict in favor of the hospital. Id., 739. The plaintiff appealed claiming, inter alia, that the court improperly had determined that there was no unity of interest between the defendants. Id., 743. The Appellate Court determined that the question to be addressed in considering unity of interest claims is whether "the liability of each [party] is separate and distinct from the liability of the other." Id., 750. It concluded that the trial court properly had applied that standard in determining that the defendants did not share a unity of interest. Id., 751. The court also stated

or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly. For the purposes of this section, a 'unity of interest' means that the interests of the several plaintiffs or of the several defendants are substantially similar. A unity of interest shall be found to exist among parties who are represented by the same attorney or law firm. In addition, there shall be a presumption that a unity of interest exists among parties where no cross claims or apportionment complaints have been filed against one another. In all civil actions, the total number of peremptory challenges allowed to the plaintiff or plaintiffs shall not exceed twice the number of peremptory challenges allowed to the defendant or defendants, and the total number of peremptory challenges allowed to the defendant or defendants shall not exceed twice the number of peremptory challenges allowed to the plaintiff or plaintiffs."

in dicta, relying in part on this court's opinion in *Walsh v. Stonington Water Pollution Control Authority*, 250 Conn. 443, 465, 736 A.2d 811 (1999), that even if the trial court had found a unity of interest, "it could, in its own discretion, give each defendant four peremptory challenges." *Marshall* v. *Hartford Hospital*, supra, 751; see also *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 465–66 (court has discretion to grant separate set of challenges to parties even when it determines that unity of interest exists). When the potential liability of each party has a "separate and distinct" source, however, each party is legally entitled to a separate set of peremptory challenges and the court has no discretion to determine otherwise.[11] See *Marshall* v.

---

[11] After *Marshall* was decided, the legislature amended §§ 51-241 and 51-243 to provide that "there shall be a presumption that a unity of interest exists among parties where no cross claims or apportionment complaints have been filed against one another," and that "the total number of peremptory challenges allowed to the plaintiff or plaintiffs shall not exceed twice the number of peremptory challenges allowed to the defendant or defendants, and the total number of peremptory challenges allowed to the defendant or defendants shall not exceed twice the number of peremptory challenges allowed to the plaintiff or plaintiffs." Public Acts 2001, No. 01-152, §§ 1, 2. The plaintiff suggests that Public Act 01-152, § 1, evidences a legislative desire to limit the number of peremptory challenges to be exercised during jury selection. The legislative history of the amendment indicates, however, that the amendment was not intended to limit the total number of challenges granted to the parties, but to ensure that there would not be a gross imbalance between the number of challenges granted to each side. See 44 H.R. Proc., Pt. 16, 2001 Sess., p. 5162, remarks of Representative Michael P. Lawlor (legislation was intended to address situation where granting of multiple sets of challenges to parties on one side works to disadvantage of other side). The legislative history also indicates that the legislature intended that, when no unity of interest is found between multiple parties on one side, the trial court has no discretion to achieve balance by reducing the number of challenges to be granted to those parties but must increase the number of challenges granted to the other side. See id., pp. 5159-60, remarks of Representative Lawlor (legislation does not give court discretion to reduce number of challenges to which party is entitled below four). In other words, Public Act 01-152, § 1, did not legislatively overrule the Appellate Court's statement that "those who have no unity of interest must receive the allowable number of individual, statutory peremptory challenges." *Marshall* v. *Hartford Hospital*, supra, 65 Conn. App. 749. Thus,

*Hartford Hospital,* supra, 749 (under § 51-241, "those who have no unity of interest must receive the allowable number of individual, statutory peremptory challenges").

In the present case, the trial court, relying on *Marshall,* concluded that because the medical malpractice action and the libel action were "separate and distinct," each party was entitled to two sets of peremptory challenges. We conclude, however, that these unity of interest cases simply do not address the question of whether the consolidation of "separate and distinct" causes of action requires the court to grant multiple sets of challenges to a single party. The defendant has not cited, nor are we aware of, any separate authority for that proposition. Accordingly, we agree with the plaintiff that a single party has no *legal entitlement* to multiple sets of challenges when distinct causes of action have been consolidated. Cf. *Connecticut Mutual Life Ins. Co.* v. *Hillmon,* 188 U.S. 208, 211–12, 23 S. Ct. 294, 47 L. Ed. 2d 446 (1903) (suggesting in dicta that, under federal statute, single plaintiff was not entitled to multiple sets of challenges when two cases involving separate defendants were consolidated for trial); *Deering* v. *Carter,* 92 Ariz. 329, 333–34, 376 P.2d 857 (1962) (under Arizona statute, multiple plaintiffs in separate cases were not entitled to separate sets of challenges when cases were consolidated for trial).

We also conclude, however, that the trial court's impropriety was harmless. The plaintiff has made no plausible claim that the granting of four additional challenges to each party prejudiced his case in any way or unduly protracted the jury selection proceedings.[12] If

although the amendment will tend to increase the number of cases in which a unity of interest is found, it will tend also to increase the total number of challenges to be granted in cases where no unity of interest is found.

[12] In any event, it would hardly promote judicial efficiency to order a new trial because the jury selection took too long.

the plaintiff is correct that the application of harmless error analysis to the trial court's mistaken determination that the law requires more peremptory challenges than it actually requires effectively will render all such actions unreviewable, that is only because such actions are highly unlikely to cause harm. Accordingly, we reject the plaintiff's claim.

Because the issue is likely to be an ongoing source of confusion in the trial courts, and because the following analysis bolsters our conclusion that the trial court's action in this case was harmless, we take this opportunity to clarify the scope of the trial court's authority to grant peremptory challenges not required by law. In *State* v. *Hancich*, 200 Conn. 615, 624, 513 A.2d 638 (1986), the trial court, at the outset of jury selection, mistakenly granted each party eight peremptory challenges instead of the four to which they were entitled. After three jurors had been selected and the defendant had exercised four challenges, the trial court discovered its error and informed the parties that they would not have eight challenges. Id. The court also offered to allow the defendant to retract his last challenge or to give the defendant an additional challenge. Id. The defendant declined both offers and moved for a mistrial. The court denied the motion. Id. On appeal, this court held that the defendant had been harmed by his reliance on the court's action and ordered a new trial. Id., 626. We also stated in dicta that the court could have avoided that result "by simply allowing the parties more peremptory challenges than provided by law . . . ." Id.; see also *State* v. *Day*, 233 Conn. 813, 845, 661 A.2d 539 (1995) ("[a] trial court may allow the parties more peremptory challenges than provided by law"), citing *State* v. *Crafts*, 226 Conn. 237, 260 n.16, 627 A.2d 877 (1993); *State* v. *Mercer*, 208 Conn. 52, 61, 544 A.2d 611 (1988) (court granted additional challenges when all prospective jurors were informed that defendant was suffering from

acquired immune deficiency syndrome); *State* v. *Miller*, 202 Conn. 463, 480, 522 A.2d 249 (1987) (court granted additional challenges when court had excused three selected jurors who had expressed apprehension over publication of jurors' names in news article); *State* v. *Hancich*, supra, 626; see also *Marshall* v. *Hartford Hospital*, supra, 65 Conn. App. 749 (case law liberal in its interpretation of §§ 51-241 and 51-243 as to granting of peremptory challenges).

We recognize that in none of the cases cited in *Day* was the granting of the additional challenges by the trial court challenged by any of the parties. Accordingly, our statements in *Day* and *Hancich* that the trial court may grant more challenges than provided by law were dicta. We can perceive no reason, however, categorically to bar the trial court from granting such challenges. To the contrary, the cases convince us that it would be unwise and impracticable for us to do so. It would only undermine judicial efficiency, for example, for this court to hold that, in circumstances like those in *Hancich*, the trial court must declare a mistrial and begin jury selection anew when the granting of additional challenges would be adequate to prevent any potential harm to the parties. As the cases also suggest, there are numerous circumstances under which trial courts may perceive a need to grant additional challenges not required by law. See *State* v. *Mercer*, supra, 208 Conn. 61; *State* v. *Miller*, supra, 202 Conn. 480; see also *State* v. *Esposito*, 223 Conn. 299, 313, 613 A.2d 242 (1992) (party must request additional peremptory challenge to preserve claim that trial court improperly denied challenge for cause). Accordingly, we conclude that the granting of more challenges than provided by law is subject to review for abuse of discretion.[13] In

---

[13] We do not apply the abuse of discretion standard in the present case because the trial court ruled that the parties were "entitled to eight peremptory challenges as of right." This court ordinarily will not uphold an erroneous legal determination on the ground that the trial court could have

conducting that review, we consider whether the granting of the challenges harmed either party or was inconsistent with an efficient and orderly judicial process.[14]

The judgment is affirmed.

In this opinion the other justices concurred.

exercised its discretion to reach the same result. See *State* v. *Martin*, 201 Conn. 74, 87-89, 513 A.2d 116 (1986).

[14] We emphasize that a finding of actual harm is not required when the trial court has *denied* peremptory challenges to which the parties are entitled by law. See *Glass* v. *Peter Mitchell Construction Leasing & Development Corp.*, 50 Conn. App. 539, 547, 718 A.2d 79 (defendant not required to show prejudice when trial court improperly found unity of interest among defendants and granted only one set of peremptory challenges), cert. granted, 247 Conn. 938, 723 A.2d 317 (1998) (appeal withdrawn July 6, 1999).