41 A.3d 657 (2012)
304 Conn. 674
Erik M. PIN et al.
v.
David L. KRAMER et al.
No. 18572.
Supreme Court of Connecticut.
Argued March 20, 2012.
Decided May 8, 2012.
*658 Robert C.E. Laney, with whom were Daniel E. Ryan III and, on the brief, Lauren E. Abbate, Stamford, for the appellants (defendants).
Lawrence F. Reilly, Greenwich, for the appellees (plaintiffs).
Brenden P. Leydon, Stamford, filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.
NORCOTT, PALMER, ZARELLA, McLACHLAN, EVELEIGH and VERTEFEUILLE, Js.
PER CURIAM.
The defendants, David L. Kramer, an orthopedic surgeon, and Danbury Orthopedic Associates, P.C., appeal, upon our grant of their petition for certification,[1] from the judgment of the Appellate Court, reversing the judgment of the trial court in their favor, rendered after a jury trial in this medical malpractice action brought by the plaintiffs, Erik M. Pin and Carrie L. Pin.[2]Pin v. Kramer, 119 Conn.App. 33, 46, 986 A.2d 1101 (2010). On appeal, the defendants contend that the Appellate Court improperly concluded that a new trial was required because the trial court had failed to grant the plaintiffs' request for a curative instruction following remarks by the defendants' expert witness, during his direct examination testimony, concerning increased health care costs caused by defensive medicine practices and increased malpractice insurance premiums arising from the proliferation of medical malpractice claims in Connecticut. Id., at 43, 45-46, 986 A.2d 1101. We disagree and affirm the judgment of the Appellate Court.
Briefly, we note the following relevant facts and procedural history as revealed by the record and the Appellate Court opinion. The plaintiffs brought this medical malpractice action against the defendants seeking, inter alia, compensatory damages for Kramer's negligence in his surgical treatment of a spinal tumor suffered by the plaintiff. The plaintiffs contended specifically that, because of Kramer's negligence, the plaintiff was required to undergo *659 two additional spinal surgeries, causing him to suffer from unnecessary pain, emotional distress and increased physical limitations and risk of future back problems, and Carrie L. Pin, his mother, to incur additional medical bills and expenses on his behalf. At trial, one significant factual issue was whether the standard of care required Kramer to order additional radiological tests, such as X rays, computerized tomography (CT) scans or magnetic resonance imaging (MRI) scans, prior to performing the first surgery on the plaintiff on December 28, 2001, in order to determine whether the tumor had grown or otherwise changed since it was first detected in April, 2001, and also after the surgery in order to monitor the plaintiff's recovery. See id., at 36-38, 986 A.2d 1101.
On the eighth day of trial, the defendants' medical expert, Todd Albert, an orthopedic surgeon, testified that "the standard of care did not require additional radiology tests," but then "explained why he would have ordered such tests had he been the treating physician. When asked why he would have ordered the radiology tests, Albert explained:
"`Well, a few reasons. One, I am with residents, fellows, and medical students all the time. So, we are ordering a lot of tests on everything so they have the opportunity to read them. And you could say, oh, that's wasteful, but that is part of being at a teaching institution. One. It is for teaching purposes as much as anything, for they have one more chance to look at just one morethey have another dot in their exposure.
"`The second reason is much different than in this part of the country and this state. I live in the worst malpractice community in the world. And ... we practice a lot of defensive medicine. It's true. It's unfortunate, but it's true. And so we order way more tests. You hear about the cost of medicine going up. We are the epicenter of it because we have more doctors leaving because they can't get insurance and things like that. So, we order way more tests than are necessary to protect ourselves. And that's just a fact. And so we get acclimated to practicing like that. So, there's lots of reasons.'" Id., at 40, 986 A.2d 1101. At that point, the "plaintiffs requested a mistrial, or in the alternative, an instruction to Albert not to refer to `things like that again,' as well as a curative instruction to the jury." Id., at 41, 986 A.2d 1101. The trial court denied the plaintiffs' requests, determining that the mention of insurance was more prejudicial to the defendants and that "there was no prejudice toward the plaintiffs, and, considering the length and expense of the trial, it would be unjust to grant the motion for a mistrial." Id., at 41-42, 986 A.2d 1101. Subsequently, the jury returned a verdict in favor of the defendants, and the trial court denied the plaintiffs' motion to set aside the verdict. See id., at 39, 986 A.2d 1101.
The plaintiffs then appealed from the judgment of the trial court to the Appellate Court, claiming, inter alia, that the trial court had abused its discretion in denying their request for a curative instruction and motion for a mistrial.[3] The *660 Appellate Court concluded that the trial court's "failure to issue a curative instruction in the face of Albert's inflammatory and prejudicial testimony was an abuse of discretion that likely influenced the jury's deliberations. Although the improper statements by Albert were not pervasive, they introduced a highly controversial and legally improper issue into the case. We conclude that based on the likelihood of prejudice, due to the nature of Albert's comments, and the court's refusal to provide the jury with an appropriate curative instruction, the plaintiffs were harmed. Accordingly, the plaintiffs were deprived of their right to a fair trial." Id., at 45-46, 986 A.2d 1101. Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case for a new trial. Id., at 46, 986 A.2d 1101. This certified appeal followed. See footnote 1 of this opinion.
Our examination of the record and briefs and our consideration of the arguments of the parties persuade us that the judgment of the Appellate Court should be affirmed on the certified issue. Pin v. Kramer, supra, 119 Conn.App. at 43-46, 986 A.2d 1101. That issue was resolved properly in the Appellate Court's concise and well reasoned opinion. Because that opinion fully addresses all arguments raised in this appeal, we adopt it as a proper statement of the issue and the applicable law concerning that issue. It would serve no useful purpose for us to repeat the discussion contained therein. See, e.g., Clinch v. Generali-U.S. Branch, 293 Conn. 774, 777-78, 980 A.2d 313 (2009).
The judgment of the Appellate Court is affirmed.
NOTES
[1] We granted the defendants' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly determine that the trial court incorrectly failed to give a curative instruction and, if so, was such failure harmful?" Pin v. Kramer, 295 Conn. 911, 989 A.2d 1074 (2010).
[2] "Carrie L. Pin brought this action as a parent and next friend of her minor son. She also brought the action on her own behalf for damages arising from her son's injuries.

"Erik M. Pin is referred to in this opinion individually as the plaintiff, and Erik M. Pin and his mother, Carrie L. Pin, are referred to collectively in this opinion as the plaintiffs." Pin v. Kramer, 119 Conn.App. 33, 35 n. 1, 986 A.2d 1101 (2010).
[3] The plaintiffs also claimed that the trial court "improperly (1) restricted their questioning of potential jurors during voir dire, (2) assumed the role of an advocate and interfered with the presentation of their case, examination of witnesses and cross-examination of the defendants' expert witness, (3) refused to admit Kramer's deposition testimony into evidence, (4) prevented them from offering rebuttal testimony regarding the defendants' learned treatises, as well as interfered with their cross-examination by improperly finding that they lacked foundation for questions regarding the learned treatises, (5) applied the learned treatise doctrine to admit inadmissible hearsay and (6) denied their motion for a mistrial or for a curative instruction after hearing improper and harmful testimony from the defendants' medical expert." Pin v. Kramer, supra, 119 Conn.App. at 35, 986 A.2d 1101. The Appellate Court did not address these issues, concluding that "they are issues that are not likely to arise again in a retrial of this case." Id., at 35 n. 2, 986 A.2d 1101.