******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The plaintiff sought to recover damages from the defendant neurosurgeon,
K, and the defendant C Co. for medical malpractice in connection with
a spinal cord injury that the plaintiff sustained during a surgery that K
performed on him to implant a spinal cord stimulator in order to control
the plaintiff's severe neuropathic pain. Specifically, the plaintiff alleged
that the defendants breached the applicable standard of care when K
performed surgery on the plaintiff and that, as a result of the injuries
caused by the defendants' negligence, the plaintiff has been permanently
deprived of his ability to carry on and enjoy life's activities. The trial
court rendered judgment in favor of the defendants in accordance with
a jury verdict, from which the plaintiff appealed to this court. On appeal,
he claimed that the trial court improperly permitted the defendants to
introduce evidence that, after the surgery, the plaintiff's pain substan-
tially resolved due to a syrinx that had developed within his spinal cord
to establish a reduction in damages, which the plaintiff maintained had
to be categorized as "benefits evidence" under the Restatement (Second)
of Torts (§ 920), and that its admission was improper because it was
outside the pleadings and contrary to public policy. The plaintiff also
claimed that the trial court erred when it failed to give his requested
jury instructions regarding the syrinx evidence. *Held* that this court was
not required to consider the merits of the plaintiff's claims as to the
trial court's rulings with respect to the syrinx evidence because, even
if the rulings were improper, they were harmless, as the jury did not
reach the issue of damages because, as evidenced by its answers to
certain jury interrogatories, it first determined that the defendants had
not breached the standard of care: the plaintiff could not prevail on
his claim that the rulings were harmful because the syrinx evidence
permeated the case, as a review of the trial transcripts revealed that
the syrinx evidence did not permeate the case but, rather, the issue
of liability was dominant and hotly contested, and although all four
neurosurgical experts testified concerning the syrinx theory, the over-
whelming majority of expert testimony concerned whether K's actions
during the surgery deviated from the standard of care; moreover, the
plaintiff's claim that the rulings were harmful because the jury could
have considered the syrinx evidence in its determination of liability was
unavailing, as the plaintiff did not, at trial, object to the syrinx evidence
on the basis that the jury might improperly consider such evidence in
its determination of liability and, thus, could not claim on appeal that
such a use would have been harmful to him, the record revealed no
testimony or argument in which the defendants or their experts had
discussed the syrinx evidence in the context of liability, and the issue
of damages was not intertwined with the issue of breach of the standard
of care; accordingly, it was not reasonably probable that the trial court's
rulings on the syrinx evidence likely affected the result of the trial.

Argued February 11—officially released July 16, 2019

*Procedural History*

Action to recover damages for the defendants' alleged
medical malpractice, brought to the Superior Court in
the judicial district of Hartford, where the court, *Dubay,
J.*, denied the plaintiff's motion to preclude certain evi-
dence; thereafter, the matter was tried to the jury; ver-
dict for the defendants; subsequently, the court denied
the plaintiff's motion in arrest of judgment, to set aside
the verdict and for a new trial, and rendered judgment

in accordance with the verdict, from which the plaintiff appealed to this court. *Affirmed.*

*Alinor C. Sterling*, with whom, on the brief, were *Sean K. McElligott* and *Sarah Steinfeld*, for the appellant (plaintiff).

*Michael R. McPherson*, with whom was *Joyce A. Lagnese*, for the appellees (defendants).

*Opinion*

ALVORD, J. The plaintiff, Brandon Scott, appeals from the judgment of the trial court, rendered following a jury trial, in favor of the defendants, Paul Kanev, a neurosurgeon, and CCMC Faculty Practice Plan, Inc. On appeal, the plaintiff claims that the trial court (1) improperly permitted the defendants to introduce evidence that the plaintiff's pain substantially resolved due to a syrinx that had developed within his spinal cord to establish a reduction in damages (syrinx evidence), and (2) erred when it failed to instruct the jury with respect to such evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In December, 2004, the plaintiff began to experience severe and intractable neuropathic pain in his groin area.[1] To treat the pain, the plaintiff was prescribed a "remarkable" amount of various narcotic medications. The plaintiff became bedridden and could not walk more than a few steps at a time. He experienced severe anxiety and was diagnosed with major depressive disorder. In addition, he gained approximately 100 pounds, and his physician described him as morbidly obese. The Social Security Administration classified him as totally and permanently disabled.

The plaintiff first visited Dr. Kanev, a neurosurgeon with CCMC Faculty Practice Plan, Inc., on April 9, 2007. Dr. Kanev recommended that he implant a spinal cord stimulator[2] to control the pain and considered it "the last resort and only option" for the plaintiff. On May 8, 2007, Dr. Kanev performed surgery on the plaintiff to implant the spinal cord stimulator. During the course of the procedure, the plaintiff sustained a spinal cord injury. Dr. Kanev, upon realizing that the plaintiff had lost sensation in the lower portion of his body, made no further attempt to implant the spinal cord stimulator and terminated the procedure. The spinal cord injury left the plaintiff paralyzed from the waist down.

Following the surgery, the plaintiff continued to experience severe neuropathic pain. By January, 2008, a syrinx began to form within the plaintiff's spinal cord.[3] In June, 2009, doctors drained the syrinx. That same year, the plaintiff had a morphine pump surgically implanted to control the pain, and he was able to begin reducing the amount of narcotic medications he was taking. By September, 2011, the plaintiff's neuropathic pain substantially resolved.[4]

The plaintiff subsequently brought this medical malpractice action against the defendants.[5] In his operative complaint,[6] the plaintiff alleged that the defendants breached the applicable standard of care when Dr. Kanev performed surgery on the plaintiff by (1) inserting the needle at the tenth and eleventh vertebrae, (2) inserting the needle at the eleventh and twelfth

vertebrae, (3) failing to enter the epidural space below the level of the spinal cord, (4) inserting the needle at an improper angle, and (5) attempting a retrograde placement of the electrode. The plaintiff alleged that, as a result of the injuries caused by the defendants' negligence, he "has been permanently deprived of his ability to carry on and enjoy life's activities and his earning capacity has been permanently diminished."

During discovery, in addition to their initial disclosure of expert witnesses, the defendants filed a supplemental expert witness disclosure, in which they indicated that they planned to call Robert Levy, a neurosurgeon, to testify regarding the syrinx evidence. Specifically, the disclosure stated that Dr. Levy would testify "that following injury to the spinal cord, [the plaintiff] developed what is referred to as a syrinx, which is a fluid filled cyst within the spinal cord. . . . Dr. Levy is expected to testify that the development of [the plaintiff's] syrinx and its subsequent drainage, on a more probable than not basis, explains why [the plaintiff's] pudendal pain has substantially resolved."

On April 14, 2016, the plaintiff filed a motion in limine to preclude the admission of the syrinx evidence. The plaintiff argued that the defendants were attempting to use the evidence to claim "that although they paralyzed [the plaintiff], their actions resulted in an improvement of his condition, which entitles them to a damages credit." The plaintiff argued that this evidence, and any argument related to this evidence, must be precluded because it is "completely outside the pleadings" and "would need to be pleaded as a special defense." The plaintiff also argued that "[t]he theory the defendants are advancing through their experts is . . . completely inconsistent with the goals of Connecticut tort law" with respect to "deterrence and compensation of [an] innocent, injured party." On May 3, 2016, the defendants filed an objection to the plaintiff's motion. They argued that the evidence was admissible, under § 920 of the Restatement (Second) of Torts, to mitigate damages.

On May 9 and 12, 2016, the court held a hearing on the plaintiff's motion in limine. The court concluded that although § 920 of the Restatement (Second) of Torts was not implicated, the defendants' evidence was admissible with respect to the plaintiff's claim of damages for loss of life's enjoyment. The court explained: "It's in the nature of [the plaintiff's] ability to engage in and enjoy life's daily activities from this day forward or from whenever the pain stopped forward. That's what it's about. It's about [the plaintiff's] damages, one category of [his] damages."

A jury trial commenced on May 12, 2016. During trial, the plaintiff submitted a written request to charge that asked the court to instruct the jury to disregard the syrinx evidence or, in the alternative, to instruct the jury that the defendants had the burden to prove that

(1) their negligent acts proximately caused the resolution of the plaintiff's pain in 2011, and (2) in the absence of their negligence, the plaintiff's pain would have continued for the rest of his life and no treatment or procedure would have controlled that pain. The court declined to give the instructions requested by the plaintiff.[7]

When the case was submitted to the jury, the trial court submitted written interrogatories for the jury to answer. The first five interrogatories, in separate subparts, asked the jury whether Dr. Kanev was professionally negligent.[8] The jury answered that Dr. Kanev was not negligent. Finding no liability, the jury returned a verdict for the defendants, thus precluding its consideration of the interrogatories that addressed causation and damages.[9] The plaintiff moved to set aside the verdict. The court denied the motion and rendered judgment in favor of the defendants in accordance with the jury verdict. This appeal followed.

On appeal, the plaintiff first claims that the court erred in admitting the syrinx evidence,[10] which the plaintiff maintains must be categorized as "benefits evidence" under § 920 of the Restatement (Second) of Torts,[11] despite the court's explanation that the evidence was not admissible as "benefits evidence" but, rather, was admissible insofar as it related to the plaintiff's claim of damages for loss of life's enjoyment. The plaintiff argues that permitting "benefits evidence" in this case was improper because it was outside the pleadings and contrary to public policy. The plaintiff also claims that the trial court erred when it failed to give his requested jury instructions regarding the syrinx evidence.[12] The defendants respond that, because the jury did not reach the issue of damages, any purported error in admitting the evidence was harmless. We agree with the defendants.

Before a party is entitled to a new trial because of an erroneous evidentiary or instructional ruling, "he or she has the burden of demonstrating that the error was harmful." (Internal quotation marks omitted.) *Allison* v. *Manetta*, 284 Conn. 389, 400, 933 A.2d 1197 (2007) (involving instructional ruling); *Kalams* v. *Giacchetto*, 268 Conn. 244, 249, 842 A.2d 1100 (2004) (involving evidentiary ruling). "[T]he standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely affected] the result." (Internal quotation marks omitted.) *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 402, 3 A.3d 892 (2010).

"[W]hen a jury does not reach an issue in returning a verdict, alleged improprieties relating to that issue are harmless." Id.; see also *Kalams* v. *Giacchetto*, supra, 268 Conn. 246, 250 (holding that any error in precluding testimony on causation in medical malpractice action was harmless because jury found no breach of standard of care and did not reach causation); *Phaneuf* v. *Ber-*

*selli*, 119 Conn. App. 330, 335–36, 988 A.2d 344 (2010) (holding that instructional error regarding causation was harmless because jury found for defendant on liability and did not reach causation).

We conclude that we need not consider the merits of the plaintiff's arguments as to the trial court's rulings with respect to the syrinx evidence because, even if we assume that the rulings were improper, they were harmless. See *Kalams* v. *Giacchetto*, supra, 268 Conn. 250.[13] The jury did not reach the issue of damages because, as evidenced by its answers to the jury interrogatories, it first determined that the defendants had not breached the standard of care.

The plaintiff claims that the rulings were harmful because (1) the syrinx evidence "permeated the case," and (2) the jury could have considered the syrinx evidence in its determination of liability.[14] We are not persuaded.

A review of the trial transcripts reveals that the syrinx evidence did not, as the plaintiff argues, "permeate" the case, nor was it a "central theme at trial." Rather, the issue of liability was dominant and hotly contested. Each side presented two expert witnesses to opine on whether Dr. Kanev breached the standard of care. The jury was tasked with determining which of the parties' multiple experts it believed—a battle of the experts. Although the plaintiff is correct that "all four neurosurgical experts testified concerning the [syrinx] theory," the overwhelming majority of expert testimony concerned whether Dr. Kanev's actions during the surgery, with respect to the angle and location at which he inserted the needle and entered the epidural space, as well as his attempt of a retrograde placement of the electrode, deviated from the standard of care.[15]

Next, with respect to the plaintiff's argument that the rulings were harmful because the syrinx evidence "prejudiced [his] ability to prove . . . liability," the plaintiff, on appeal, explains his theory as to how the syrinx evidence could have been considered by the jury in its determination of liability. First, the plaintiff points to the expert testimony that explained the standard of care in terms of avoiding unnecessary risks. The plaintiff argues that the syrinx evidence and related argument, if accepted, "established that paralysis was necessary to the eventual cure of [the plaintiff's] neuropathic pain." He concludes that, if the jury could find that the paralysis was considered a *necessary* risk, it could find that Dr. Kanev had avoided *unnecessary* risks, in conformance with the standard of care.

We first note that the plaintiff did not, at trial, object to the syrinx evidence on the basis that the jury might improperly consider such evidence in its determination of liability. Accordingly, the plaintiff cannot now, on appeal, claim that such a use would have been harmful

to him.[16]

On June 7, 2016, in addressing his request to charge, the plaintiff argued that submitting the syrinx evidence to the jury "is prejudicial . . . because it affects, essentially, the entire case." The plaintiff argues that this single statement should be viewed as his objection to the use of the syrinx evidence with respect to liability. We are not persuaded. Immediately following this statement, the plaintiff explained: "What it does, is it says to the jury that [it] can compare [the plaintiff's] pre-pain going away state to his current state *in order to determine what his measure of damages is*." (Emphasis added.)

Moreover, the record reveals no testimony or argument in which the defendants or their experts had discussed the syrinx evidence in the context of liability. The defendants' position that Dr. Kanev had conformed to the standard of care was not based on the fact that the plaintiff's neuropathic pain had substantially resolved or that Dr. Kanev's actions contributed to that resolution. Rather, the defendants' experts testified that Dr. Kanev had not breached the standard of care because (1) with respect to the location where he inserted the needle, Dr. Kanev would have had difficulty entering underneath the plaintiff's spinal cord due to scar tissue at that location, and (2) with respect to the angle at which he inserted the needle, Dr. Kanev would have had difficulty entering at a more shallow angle due to the plaintiff's obesity. Both of the defendants' experts opined that the plaintiff suffered a spinal cord injury, not because of any negligence on the part of Dr. Kanev, but because of an undiscovered herniated disc located at the plaintiff's eleventh and twelfth vertebrae.

Finally, in support of his argument, the plaintiff cites to our Supreme Court's decision in *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 9 A.3d 364 (2010).[17] *Klein*, however, is distinguishable from the present case. In *Klein*, the jury found that the defendant had not breached the standard of care. Id., 256. On appeal, the defendant argued that, although the trial court had improperly excluded the plaintiff's expert testimony, because that testimony would have been irrelevant to the issue of breach and dealt *only* with the question of causation, the impropriety was harmless. Id. Our Supreme Court disagreed. It concluded that the trial court's error was harmful because, under the circumstances of that case, "breach of the standard of care and causation were intertwined," and, therefore, the excluded testimony involved an issue "central to the question of not only causation, but breach as well."[18] Id., 256–57. In the present case, the issue of damages is not intertwined with the issue of breach of the standard of care. Moreover, what caused the plaintiff's pain to resolve was not central to the question of whether Dr. Kanev breached the standard of care.

Accordingly, we must conclude that it is not reasonably probable that the rulings on the syrinx evidence likely affected the result of the trial—that the defendants were not liable to the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] At trial, this condition was also referred to as "pudendal pain." The plaintiff described his pain as "severe horrific pain in the penis, rectum, perineum, testicles and inner thighs," which included "[s]tabbing pains, burning pains, pinpricking pains, twisting pains, pulling pains, and pains of foreign objects in his rectum."

[2] Dr. Kanev testified that "spinal cord stimulation blocks the conduction of the neuropathic pain, preventing it from ever reaching the brain," and "the pain that [the patient] is feeling becomes replaced by the tingling of the stimulation electrode."

[3] Giancarlo Barolat, a neurosurgeon, testified that a syrinx is a "cavity that is formed within the spinal cord and is filled with fluid."

[4] The plaintiff was able to stop taking all narcotic medications and stopped use of the morphine pump. The plaintiff, at the time of trial, testified that he continues to experience a low level of neuropathic pain that is manageable without medication. He also testified that he is able to work part-time and attend college. In addition, the plaintiff testified that he recently became engaged to be married and plans to attend graduate school.

[5] The plaintiff asserted claims against CCMC Faculty Practice Plan, Inc., in its capacity as Dr. Kanev's employer.

[6] The plaintiff's second amended complaint, which is the operative complaint in this case, was filed on March 22, 2016.

[7] The court concluded: "To the extent that the filing asked that the court charge the jury to disregard the evidence and argument concerning the beneficial effect of the defendants' negligence, I respectfully decline to charge the jury, and I will allow argument." The court reasoned that the evidence was not, as the plaintiff argued, being admitted under § 920 of the Restatement (Second) of Torts. It reiterated that "[the evidence is] in the case [because] the damages of [the plaintiff's] loss of enjoyment of life has got to include his current state." The court also declined to give the plaintiff's requested instruction regarding the burden of proof because, it noted, the plaintiff has the burden of proof on damages.

[8] Specifically, the breach related interrogatories asked whether Dr. Kanev deviated from the standard of care when he (1) inserted the needle at the tenth and eleventh vertebrae, (2) inserted the needle at the eleventh and twelfth vertebrae, (3) failed to enter the epidural space below the level of the spinal cord, (4) inserted the needle at an improper angle, and (5) attempted a retrograde placement of the electrode. Four of the five interrogatories also asked whether Dr. Kanev's conduct "unnecessarily increased the risk of spinal cord injury."

[9] "[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. . . . Generally, expert testimony is required to establish both the standard of care to which the defendant is held and the breach of that standard." (Internal quotation marks omitted.) *Kalams* v. *Giacchetto*, 268 Conn. 244, 247 n.3, 842 A.2d 1100 (2004).

[10] Specifically, the plaintiff claims that the syrinx evidence was improperly admitted under § 920 of the Restatement (Second) of Torts in order for the defendants to prove that their negligence had conferred a special benefit to the plaintiff—that they had caused the development of the syrinx, which substantially resolved the plaintiff's pain—and for the value of that benefit to be considered in mitigation of damages.

[11] Section 920 of the Restatement (Second) of Torts provides: "When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable."

[12] Specifically, the plaintiff argues that the court should have instructed the jury to disregard the defendants' evidence that the syrinx caused the

plaintiff's pain to substantially resolve, and any argument based on such evidence, because (1) the resolution of the plaintiff's pain was too remote in time from the defendants' actions, (2) there was "a complete absence of medical literature to support [the defendants'] argument," and (3) it was impermissible "benefits evidence" under § 920 of the Restatement (Second) of Torts.

The plaintiff further argues, as he did before the trial court, that the court should have instructed the jury that the defendants had the burden to prove that (1) their negligent acts proximately caused the resolution of the plaintiff's pain in 2011, and (2) in the absence of their negligence, the plaintiff's pain would have continued for the rest of his life and no treatment or procedure would have controlled that pain. This argument is predicated on the plaintiff's contention that the syrinx evidence was "benefits evidence" under § 920 of the Restatement (Second) of Torts.

Finally, the plaintiff argues that the trial court also erred in failing to provide the defendants' proposed charge on damages because "it would have given the jury some guidance about the nature of their claim," and "an imperfect curative instruction is better than no curative instruction at all."

[13] The plaintiff argues that the present case is distinguishable from *Kalams* v. *Giacchetto*, supra, 268 Conn. 246, because "[t]he record here . . . provides no assurance that the jury considered the elements in sequence." In the present case, when the jury initially delivered its verdict form to the court, it failed to deliver completed interrogatories. When the court inquired where the interrogatories were, the jurors stated that they could not find them. The court thereafter provided the jury with another copy of the interrogatories. The jury, after completing the interrogatories, returned a verdict for the defendants. Based on this sequence of events, the plaintiff argues: "Here, it is not possible to presume that the jury did not reach the [syrinx evidence] before it considered breach." We disagree.

Apart from submitting the interrogatories to the jury, the court instructed the jury in relevant part: "[A] civil trial such as this has two issues: liability and damages. You will reach the issue of damages only if you find liability in favor of the plaintiff. If you find that liability is established, you will have occasion to apply my instructions concerning damages. If you find that liability has not been established, then you will not consider damages." We presume that the jury followed these instructions. See *Hurley* v. *Heart Physicians*, *P.C.*, supra, 298 Conn. 402 ("[i]n the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them" [internal quotation marks omitted]).

[14] The plaintiff, citing *Pin* v. *Kramer*, 119 Conn. App. 33, 45, 986 A.2d 1101 (2010), aff'd, 304 Conn. 674, 41 A.3d 657 (2012), also argues that the defendants' counsel made comments during trial that "explicitly attacked the medical negligence system." We fail to see how any such alleged comments, which are not themselves challenged on appeal, relate to any harm caused by the rulings on the syrinx evidence.

[15] The defendants' experts testified at length as to whether Dr. Kanev's conduct fell within the standard of care before being asked to opine about what caused the plaintiff's pain to substantially resolve.

[16] For this same reason, we find unpersuasive the plaintiff's argument that the rulings on the syrinx evidence were harmful because, unlike in *Hurley* v. *Heart Physicians*, *P.C.*, supra, 298 Conn. 399–401, "the charge given . . . allows the jury to consider the [syrinx evidence] at any time for any purpose." In the present case, the plaintiff had not requested a limiting instruction such as the one provided in *Hurley*.

[17] The plaintiff also cites to *Barbosa* v. *Osbourne*, 237 Md. App. 1, 183 A.3d 785 (2018). In *Barbosa*, the trial court improperly admitted evidence of contributory negligence. Id., 19–20. Although the jury found that the plaintiff failed to prove breach, which was to be considered separately from contributory negligence, the appellate court, nevertheless, found the evidentiary impropriety harmful because the evidence "pervaded every aspect of the trial below." Id., 20. We are not persuaded by the court's reasoning in *Barbosa* because, as we explain in this opinion, the syrinx evidence did not permeate the trial.

[18] Our Supreme Court explained that breach of the standard of care and causation were "intertwined" because "[t]he determination of whether the defendant had breached the standard of care could be reduced to the question of what caused the plaintiff's alleged injury . . . ." *Klein* v. *Norwalk Hospital*, supra, 299 Conn. 256–57.